25 F.3d 1308
 146 L.R.R.M. (BNA) 2615, 64 Fair
Empl.Prac.Cas. (BNA) 1785,
65 Empl. Prac. Dec. P 43,278, 62 USLW 2780,
128 Lab.Cas. P 11,165
 Donald C. TISDALE and Larron E. Hughes, Plaintiffs-Appellants,
v.
UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the
PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED
STATES AND CANADA, LOCAL 704, Defendant-Appellee.
 No. 92-2433.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 9, 1993.
Decided June 9, 1994.
 
 James K. Fett (argued), Douglas B. Shapiro (briefed), Ypsilanti, MI, for plaintiffs-appellants.
 J. Douglas Korney, Korney & Heldt, Birmingham, MI, (argued and briefed), for defendants-appellees.
 Before: MERRITT, Chief Judge; SUHRHEINRICH, Circuit Judge; and WELLFORD, Senior Circuit Judge.
 MERRITT, Chief Judge.
 
 
 1
 This appeal requires us to apply the holding in Caterpillar, Inc. v. Williams, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), concerning federal removal jurisdiction in federal labor preemption cases. The two plaintiffs before us seek to transfer from a union local in Toledo, Ohio, to the defendant union local in Detroit, Michigan. They filed state race discrimination claims in state court under Michigan's Elliott-Larsen Civil Rights Act,[1] alleging that the Detroit local refused to allow them to transfer because they are black. No federal claims are alleged in the complaint, and there is no diversity of citizenship. Nevertheless, the district court allowed the local union to remove the action to federal court under 28 U.S.C. Sec. 1441 because the defendants rely as a defense upon a provision of the international union's constitution which disallows such transfers from one local to another unless the member establishes local residency.[2] The district court reasoned that doctrines of federal labor preemption arising under Sec. 301 of the Taft-Hartley Act[3] make removal appropriate whenever the court's adjudication of the case will involve interpretation of a labor contract or union constitution.
 
 
 2
 In the Caterpillar case the underlying issue was whether an individual employment contract applied, as plaintiff-employees contended, or a federal collective bargaining agreement created a federal defense, as claimed by the defendant-employer. The Supreme Court disallowed removal to the federal court of plaintiffs' action under state law for breach of the individual employment contract even though the employer's main defense required an interpretation of the collective bargaining agreement. The Court reasoned that "the presence of a federal question, even a Sec. 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule--that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." Caterpillar, 482 U.S. at 398-99, 107 S.Ct. at 2433.
 
 
 3
 In the instant case, it is the union's defense which raises the likelihood that the trial court will have to interpret the union constitution. As in other cases in which a defendant asserts a defense based on a federal constitutional, statutory, or administrative provision, the state court may have to interpret some text affected by federal law. But this neither invokes removal jurisdiction nor divests the state court of its normal authority to adjudicate a case that contains an issue touching upon federal law. We therefore conclude that the district court erred when it did not apply Caterpillar 's principles of judicial federalism, and we reverse the judgment allowing removal of the action under Sec. 1441.
 
 
 4
 There has been considerable confusion in this area of the law, and we well understand how the district court and the parties might misinterpret the way the legal principles in this area fit together. We therefore outline in further detail our understanding of the development of the law.
 
 
 5
 * * * * * *
 
 
 6
 Plaintiffs are members of Local 669 of the International Plumbers and Pipefitters Union in Toledo. They applied for transfer to Local 704, which covers four counties in the vicinity of Detroit. Both plaintiffs met all requirements for transfer except residency; at the time of their applications they still lived in Toledo. Plaintiffs requested that the residency requirement be waived, but the Detroit local denied their applications. Plaintiffs claim that they suffered racially disparate treatment at the hands of the Detroit local, which has a number of white members who do not reside in the four-county Detroit area. They allege that the Detroit local gave residency waivers to these white members but refused the same to the black plaintiffs.
 
 
 7
 The union's defense is that the union constitution requires residency for entry into a local union but contains no requirement that a duly admitted member of a local union be stripped of membership if he or she later moves out of the local's geographical area.
 
 
 8
 Federal labor law is said to "preempt" state claims which fall within the ambit of the Taft-Hartley Act on the ground that the maintenance of relative peace between labor and management nationwide requires uniform interpretation of collective bargaining agreements. Lingle v. Norge Div. of Magic Chef, 486 U.S. 399, 404, 108 S.Ct. 1877, 1880, 100 L.Ed.2d 410 (1988); Teamsters v. Lucas Flour Co., 369 U.S. 95, 103-4, 82 S.Ct. 571, 576-77, 7 L.Ed.2d 593 (1962). "[T]he preemptive force of Sec. 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of Sec. 301." Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983).
 
 
 9
 The Supreme Court has extended Sec. 301 beyond claims founded directly on rights created by collective-bargaining agreements to reach state-law tort claims which are " 'substantially dependent on analysis of a collective-bargaining agreement.' " Caterpillar, 482 U.S. at 394, 107 S.Ct. at 2430 (quoting Int'l Bhd. of Elec. Workers v. Hechler, 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2167 n. 3, 95 L.Ed.2d 791 (1987)). See also Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985) (court ruling on preemption must focus on "whether evaluation of the [state-law] claim is inextricably intertwined with consideration of the terms of the labor contract").
 
 
 10
 The Court has also extended Sec. 301 to cover intra-union agreements, including union constitutions. United Ass'n of Journeymen v. Local 334, 452 U.S. 615, 627, 101 S.Ct. 2546, 2553, 69 L.Ed.2d 280 (1981). It is now clear that an individual union member may bring a suit under Sec. 301 against a union to enforce a union constitution. Wooddell v. Int'l Bhd. of Elec. Workers, --- U.S. ----, ----, 112 S.Ct. 494, 499, 501, 116 L.Ed.2d 419 (1991).
 
 
 11
 Neither United Ass'n of Journeymen nor Wooddell are removal cases, nor does either raise an issue of preemption nor state that Sec. 301 gives the federal courts exclusive jurisdiction over suits to enforce union constitutions. The Court's language in Wooddell echoes that used in earlier cases to the effect that labor contracts need to be uniformly interpreted nationwide,[4] however, and we think it fair to say that intra-union matters are now preempted on the same terms as are labor-management matters.
 
 
 12
 At the same time, Sec. 301 does not preempt every suit involving unionized employees or their unions or divest state courts of their normal jurisdiction. The Supreme Court's unanimous decisions disallowing preemption in Caterpillar and Lingle confirm this. Federal law has monopolized certain aspects of labor relations, but where a suit does not center on the terms of a labor contract (collective bargaining agreement, union constitution, or other) it is not preempted because it is not within the arena of labor relations which Congress has nationalized:
 
 
 13
 Section 301 does not ... require that all "employment-related matters involving unionized employees" be resolved through collective bargaining and thus be governed by a federal common law created by Sec. 301. The Court has stated that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by Sec. 301 or other provisions of the federal labor law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985). Claims bearing no relationship to a collective bargaining agreement [or, now, union constitution] beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by Sec. 301.
 
 
 14
 Caterpillar, 482 U.S. at 396 n. 10, 107 S.Ct. at 2431 n. 10.
 
 
 15
 Moreover, federal preemption does not change the procedural rules governing removal:
 
 
 16
 [T]he presence of a federal question, even a Sec. 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule--that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court. When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has chosen to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option. But a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing. Congress has long since decided that federal defenses do not provide a basis for removal.
 
 
 17
 Id., 482 U.S. at 398-99, 107 S.Ct. at 2432-33 (emphasis in original).
 
 
 18
 Thus, preemption and removal are related but distinct concepts. Even "[t]he fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted ... does not establish that they are removable to federal court." Id. at 398, 107 S.Ct. at 2432 (emphasis in original).
 
 
 19
 In the instant case, plaintiffs' complaint invokes Michigan's civil rights statute and alleges that the union gave residency waivers to white applicants but not to them. Plaintiffs argue that they do not allege any federal injury or ask for any federal remedy and that their allegation of racially disparate treatment can be determined without interpreting the union constitution.
 
 
 20
 The Detroit local answers that it simply followed the procedures set forth in the union constitution, which the union says dictates that transfer be denied to members of another local union who have not changed domicile but does not prevent duly admitted members of a local union from remaining members even after moving out of the local's geographical area. The union argues that adjudication of the case will thus require the trial court to interpret the union constitution, and that the case therefore raises a federal question and may be removed. The district court agreed.
 
 
 21
 Applying Caterpillar, we find that plaintiffs' state-law claim may not be removed because it arises from an independent body of state substantive rights and does not invoke any legal ground that has been preempted by federal labor law. Nor is the claim "inextricably intertwined with consideration of the terms of the labor contract." Allis-Chalmers v. Lueck, 471 U.S. at 213, 105 S.Ct. at 1912.
 
 
 22
 Had plaintiffs brought a breach of contract action in state court alleging that the union had violated a provision in its constitution guaranteeing nondiscrimination, their claim properly understood would arguably have been removable because it would have been in an area occupied by federal law to the exclusion of state law. That claim would have centered on interpretation of the union constitution and would therefore have arisen under federal law, even though pleaded as a state claim. But plaintiffs actually alleged disparate treatment under a state civil rights statute, not breach of the union constitution. As Caterpillar states, the fact that the defendant raises a federal preemption defense does not mean that this cause of action arises under federal law; nor does the fact that analysis of the union's preemption defense may require a court to interpret the union constitution.
 
 
 23
 Our holding in this case is also supported by this circuit's en banc opinion in Smolarek v. Chrysler Corp., 879 F.2d 1326 (6th Cir.), cert. denied, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989). There, the majority refused to preempt an employee's state-law handicapped-discrimination claim that Chrysler illegally refused to return him to his former position because of his handicap, even though Chrysler's defense was that it had acted properly under the collective-bargaining agreement. Id. at 1333-34.[5] See also Welch v. General Motors Corp., 922 F.2d 287, 290 (6th Cir.1990); O'Shea v. Detroit News, 887 F.2d 683, 687 (6th Cir.1989).
 
 
 24
 Put in more fundamental terms, we do not believe that the instant case is within the area which Congress meant to occupy in the Taft-Hartley Act. This is not fundamentally a labor case involving negotiated contractual terms, which is what Sec. 301 addresses. This is a discrimination case involving non-negotiable rights guaranteed by the State of Michigan.
 
 
 25
 In fact, if any federal law were applicable here it would be not the Taft-Hartley Act but Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e et seq., which forbids racial and other discrimination by employers and labor organizations. Title VII specifically does not preempt state civil rights actions. 42 U.S.C. Sec. 2000e-7. It should be self-evident that if Congress did not preempt state civil rights actions by operation of federal civil rights law it could not have meant to do so through federal labor law. As the Supreme Court has stated, "it would be inconsistent with congressional intent under [Sec. 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." Allis-Chalmers v. Lueck, 471 U.S. at 212, 105 S.Ct. at 1912.
 
 
 26
 Plaintiffs were free to sue in state or federal court under Title VII, and if they had brought such a suit in state court the union would have been entitled to remove the case to federal court on the ground that plaintiffs' claim arose under federal law. But plaintiffs were also fully entitled to choose, as they did, to bring only their state claim in state court. The union may not remove this case because it does not arise under federal law--plaintiffs do not invoke federal labor law, nor do they allege an injury which is within the area of labor relations over which Congress and the courts have given federal institutions exclusive jurisdiction.
 
 
 27
 * * * * * *
 
 
 28
 On appeal, defendant Local 704 insists that the instant case is controlled by Lingle v. Norge Div. of Magic Chef, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). The union does not discuss Caterpillar.
 
 
 29
 After the plaintiff in Lingle notified her employer that she had been injured on the job and requested compensation for her medical expenses under the Illinois Workers' Compensation Act, she was discharged for filing an allegedly false worker's compensation claim. Her union filed a grievance pursuant to the collective-bargaining agreement, which protected employees from discharge except for "just" cause and provided for arbitration of disputes over the terms of the agreement.
 
 
 30
 While arbitration was proceeding, the employee filed a retaliatory discharge action in an Illinois state court, alleging that she had been discharged for exercising her rights under the Illinois Worker's Compensation Act. The defendant removed the suit to federal court on the basis of diversity of citizenship and the district court dismissed the complaint. Citing Allis-Chalmers v. Lueck, the district court found that the retaliatory-discharge claim was preempted by Sec. 301 because it was "inextricably intertwined" with the provision in the collective bargaining agreement prohibiting discharge without just cause, and that allowing the state-law action to proceed would undermine the arbitration procedures in the agreement. The Court of Appeals affirmed.
 
 
 31
 The Supreme Court reversed, holding that the plaintiff's state-law claim was not preempted by Sec. 301 because its resolution did not depend upon the meaning of the collective bargaining agreement. Although the plaintiff's state tort claim and her federal contractual rights might require analysis of many of the same facts, analysis of the state claim was not dependent upon any construction of the collective bargaining agreement. Lingle, 486 U.S. at 407-08, 108 S.Ct. at 1882. The Court stated the principle of the case as follows:
 
 
 32
 [I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles--necessarily uniform throughout the Nation--must be employed to resolve the dispute.
 
 
 33
 . . . . .
 
 
 34
 In sum ... an application of state law is pre-empted by Sec. 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement.
 
 
 35
 Id. at 405-06, 413, 108 S.Ct. at 1881, 1885.
 
 
 36
 Construing this language broadly to require that any case which involves the interpretation of a labor agreement must be preempted, Local 704 would place the instant case within the scope of Sec. 301.
 
 
 37
 We disagree for several reasons. First, we believe that Lingle on its facts stands for a narrower rule than the union proposes. In Lingle, federal labor arbitration was underway when the plaintiff initiated her state suit, and the Supreme Court still found unanimously that the plaintiff also had an unpreempted state cause of action which was based on an independent font of substantive rights and did not conflict with exclusive federal jurisdiction to solve disputes over collective bargaining agreements. Lingle 's rule may seem broad in the abstract, but Lingle 's result demonstrates that the Court carefully avoided the destruction of state interests which did not conflict with federal prerogatives.
 
 
 38
 Second, Lingle does not change the basic Caterpillar rule about removal. The two cases were decided in the Supreme Court one year apart, both unanimously, and we read them as consistent with each other.
 
 
 39
 In fact, Lingle was not even a case about removal procedure. The defendant employer had removed the action to federal court on the ground of diversity of citizenship, and that removal was not an issue on appeal. Instead, the case was about whether the lawsuit, now federal, was preempted by federal labor arbitration under Sec. 301. Lingle explains the reach of Sec. 301 but says nothing about removal procedure. It does not permit a defendant's invocation of Sec. 301 to change the plaintiff's claim into one arising under federal law.
 
 
 40
 Because this appeal is about removal, and because under Caterpillar a defensive assertion of Sec. 301 does not raise a federal question for removal purposes, we need not decide whether the trial court will ever have to interpret the union constitution in order to adjudicate the instant case. We note, however, that this case is factually similar to Smolarek in that the defendant's motivation is the key factual issue. See Smolarek, 879 F.2d at 1334. Plaintiffs claim a state right not to be discriminated against by a labor organization, and it is the union's defense that raises the Sec. 301 issue concerning the union constitution. In the language of Lingle, the application of state law called for in plaintiffs' complaint does not require interpretation of the union constitution; it is only the defense to that application that may so require.
 
 
 41
 As the Supreme Court stated in Caterpillar, "it is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, 482 U.S. at 392-93, 107 S.Ct. at 2429-30 (emphasis in original).
 
 
 42
 * * * * * *
 
 
 43
 For the reasons stated above, we REVERSE the order of the district court granting removal and REMAND with instructions to return the suit to the Michigan state court for adjudication.
 
 
 
 [1]
 Sec. 204 of the Elliott-Larsen Act provides that:
 A labor organization shall not:
 (a) Exclude or expel from membership, or otherwise discriminate against, a member or applicant for membership because of religion, race, color, national origin, age, sex, height, weight, or marital status.
 MICH. COMP. LAWS ANN. Secs. 37.2204 (West 1985).
 
 
 [2]
 Sec. 226(c) of the union constitution provides that:
 A journeyman member requesting a transfer card must file a signed statement with the Local union satisfactorily showing that he is permanently changing and moving his domicile and residence to the territorial jurisdiction or area of the Local union to which he desires to transfer his membership.
 
 
 [3]
 29 U.S.C. ch. 7, also known as the Labor Management Relations Act of 1947. Section 301 of the Taft-Hartley Act provides that:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ..., or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 29 U.S.C. Sec. 185(a).
 
 
 [4]
 The Wooddell Court noted:
 If suit by an employee to enforce an interunion contract is not authorized by Sec. 301 and the employee is remitted to state court and to state law, it is plain that the same contract terms might be given different meanings based solely on the identity of the party. This would exert the disruptive influence [on labor relations] our cases have spoken of [in the context of collective bargaining agreements].
 --- U.S. at ----, 112 S.Ct. at 500.
 
 
 [5]
 In Smolarek, Judge Wellford wrote that:
 Chrysler may, in its own defense, assert that its treatment of Smolarek was allowed or required by the terms of the collective bargaining agreement and therefore was not based on Smolarek's handicap. The assertion of a defense requiring application of federal law, however, does not support removal to federal court[.]
 * * *
 We find that Smolarek's complaint pleaded a cause of action based solely on Michigan's [handicapped civil rights statute.] ...
 ... That Chrysler may defend this ... claim by reference to its responsibilities under the collective-bargaining agreement ... is, in our view, no basis to hold that Sec. 301 preemption is mandated under these circumstances....
 As the Supreme Court noted in Caterpillar, although the state court may need to determine whether Sec. 301 preempts Smolarek's claim in light of Chrysler's defense based on the collective-bargaining agreement, this court need not consider that issue. It is sufficient that we find that Smolarek's well-pleaded complaint did not arise under federal law or under the collective-bargaining agreement, and was not inextricably intertwined with the latter.
 879 F.2d at 1333-34 (citations omitted).