Phyllis WILLETT, Plaintiff,

v.

GENERAL MOTORS CORPORATION, Lynn Thayer, in her individual and official capacities, Jointly and Severally, Defendants.

Civ. A. No. 95–40359.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 17, 1995.

Nikki R. Wright, Bowman & Brooke, Detroit, MI, for Lynn Thayer.

Arnold E. Reed, Detroit, MI, for Phyllis Willett.

## *MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION TO AMEND PLAINTIFF'S COMPLAINT AND REMAND*

GADOLA, District Judge.

On August 31, 1995, plaintiff brought suit in the Circuit Court for the County of Oakland, Michigan, alleging Race Discrimination and Harassment, in violation of the Elliott–Larsen Civil Rights Act, and Intentional Interference with a Business Relationship, in violation of Michigan common law. On September 27, 1995, defendants removed the action to this court, asserting subject matter jurisdiction under Section 301 of the Labor Management Relations Act of 1947, codified at 29 U.S.C. § 185(a) (hereinafter "§ 301"). On October 11, 1995, plaintiff filed the present motions to amend her complaint and remand the action to the state court. Pursuant to Local Rule 7.1(e)(2), these motions are being decided on the papers submitted to the court. For the reasons stated below, the court will grant the plaintiff's motions.

### I. Factual Background

Plaintiff, a black employee of defendant General Motors Corp. (hereinafter "GM") for approximately 18 years, brought this suit arising out of her termination from GM. Plaintiff alleges that she was harassed and wrongly terminated by Defendant Thayer, plaintiff's white supervisor, on the basis of plaintiff's race. The alleged harassment took the form of Ms. Thayer wrongly taking a tape recorder from plaintiff's person and, during a search for weapons, taking $10,000 worth of jewelry from plaintiff's locker. Additionally, plaintiff alleges that she was wrongly suspended pending an investigation into the tape recorder incident. Plaintiff further alleges that Ms. Thayer interpreted a list of employees thought to have been created by the plaintiff as a "hit list," and, because of this list, wrongly terminated plaintiff for making threatening remarks toward plant supervision and/or another employee.[1]

Plaintiff filed a grievance pursuant to procedures outlined in the collective bargaining agreement which pertained to her employment. GM management did not reinstate plaintiff. Plaintiff, rather than exhausting her appeals within the grievance system, filed the present action in state court. GM had the suit removed to this court. Plaintiff responded by filing the present motions to amend the complaint and remand the case to state court. The amended complaint contains only one count, for violation of the Elliott–Larsen Civil Rights Act, alleging that plaintiff was discharged and harassed because of her race.

### II. Analysis

This case raises the question of whether a wrongful termination action brought under the Elliott–Larsen Civil Rights Act by a unionized employee is removable because preempted by the Labor Management Relations Act. Under the decisions of the Supreme Court in *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), and *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), and their progeny in the Sixth Circuit, this court believes that such an action is not preempted and may not properly be removed.

Under the applicable portion of the removal statute, 28 U.S.C. § 1441(a), an action may be properly removed if it could have been brought originally in federal court. Defendants claim that there is original federal question jurisdiction over this action. As explained by the Supreme Court:

The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that *federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.* The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

*Caterpillar,* 482 U.S. at 392, 107 S.Ct. at 2429 (citations and footnotes omitted). Under this

---

1. GM denies these allegations. It is their position that plaintiff was terminated for repeatedly making threatening remarks to various members of GM management.

rule, an action may not be removed on the basis of a defense that raises a federal question, including the defense of preemption. *Id.* at 393, 107 S.Ct. at 2430 (citing *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853–54, 77 L.Ed.2d 420 (1983)).

Nevertheless, under the "complete preemption" doctrine, there are limited circumstances under which a complaint that alleges a state claim is treated as alleging a federal claim for purposes of the well-pleaded complaint rule because federal law has preempted the state claim. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430 (citing *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)). Section 301 preempts state law claims requiring interpretation of collective bargaining agreements. *Lingle,* 486 U.S. at 405–06, 108 S.Ct. at 1881. Section 301 states, in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees ... or between any such labor organizations, may be brought in any district court in the United States having jurisdiction of the parties....

Federal preemption of state causes of action requiring interpretation of collective bargaining agreements exists to ensure uniformity in the interpretation of these agreements. *Lingle,* 486 U.S. at 406, 108 S.Ct. at 1881. Section 301 does not, however, "require that all 'employment-related matters involving unionized employees' be resolved through collective bargaining and thus be governed by a federal common law created by § 301 [of the LMRA]." *Caterpillar,* 482 U.S. at 396 n. 10, 107 S.Ct. at 2431 n. 10. Rather, in *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) the Court held that "it would be inconsistent with congressional intent under [§ 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212, 105 S.Ct. at 1912. As stated in *Lingle:*

even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other hand, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 preemption purposes.

*Lingle,* 486 U.S. 399, 409–410, 108 S.Ct. 1877, 1883. This is because "notwithstanding the strong policies encouraging arbitration [as required by a collective bargaining agreement], 'different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." *Id.* at 412, 108 S.Ct. at 1884. Congress never intended to limit such substantive guarantees through § 301.[2]

Thus, the question is whether the claim filed by the plaintiff under the Elliott–Larsen Civil Rights Act is independent of plaintiff's collective bargaining agreement, i.e., whether plaintiff's claim requires interpretation of the provisions of the agreement. In *Lingle,* the Supreme Court determined this issue with respect to a unionized plaintiff's state-law claim for retaliatory discharge. The *Lingle* court held that such a claim was not preempted. *Id.* at 413, 108 S.Ct. at 1885. The Court first noted that the issues that must be resolved were whether plaintiff was discharged or threatened with discharge by his employer for improper reasons. *Id.* at 407, 108 S.Ct. at 1882. In supporting its holding that the state-law claim was not preempted, the Court reasoned:

> Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement. To defend against a retaliatory discharge claim, an employer must show that it had a non-retaliatory reason for the discharge, this purely factu-

---

2. As stated by the Sixth Circuit, "[i]t should be self-evident that if Congress did not preempt state civil rights actions by operation of federal civil rights law it could not have meant to do so through federal labor law." *Tisdale v. United Ass'n of Journeymen,* 25 F.3d 1308, 1312 (6th Cir.1994).

al inquiry likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement. . . .

*Id.*

Although *Lingle* dealt with a retaliatory discharge claim and the present case involves a discriminatory discharge claim, the relevant factual issues are the same: the conduct of the plaintiff and the conduct and motivation of the employer. As in *Lingle,* resolution of these issues does not require interpretation of plaintiff's collective bargaining agreement. Further, *Lingle* hints, in dicta, that § 301 does not preempt state civil rights statutes. *Id.* at 412, 108 S.Ct. at 1884–85 ("The Court of Appeals 'recognize[d] that § 301 does not pre-empt state anti-discrimination laws, even though a suit under these laws, like a suit alleging retaliatory discharge, requires a state court to determine whether just cause existed to justify the discharge.' "). Thus, *Lingle* supports remanding the present case.

Further, the Sixth Circuit held, in *Tisdale v. United Ass'n of Journeymen,* 25 F.3d 1308 (6th Cir.1994), that a claim alleging "disparate treatment under a state civil rights statute" was independent from a collective bargaining agreement and was not removable under 29 U.S.C. § 185(a). *Id.* at 1314. The court reasoned that "this is not fundamentally a *labor* case involving negotiated contractual terms, which is what § 301 addresses. This is a *discrimination* case involving non-negotiable rights guaranteed by the State of Michigan." *Id.* at 1312. Clearly, the same analysis applies to the case at bar. *See also Smolarek v. Chrysler Corp.,* 879 F.2d 1326 (6th Cir.1989) (holding that 29 U.S.C. § 185(a) does not preempt state-law claims brought by unionized plaintiffs under Michigan's Handicappers' Civil Rights Act and Michigan's retaliatory discharge statute). Defendant argues that even though § 301 does not preempt claims under the Elliott–Larsen Act, plaintiff's complaint is still so

intertwined with contract issues that removal is appropriate.[3] Defendants' argument misses the mark. Plaintiff's complaint is not, as the defendants claim, founded on the denial of rights defined solely by contract. To the contrary, her complaint alleges only the denial of rights defined by Michigan's civil rights statutes, which are unaffected by plaintiff's collective bargaining agreement. As in *Tisdale,* this court is drawn to the conclusion that "plaintiff's state-law claim may not be removed because it arises from an independent body of state substantive rights and does not invoke any legal ground that has been preempted by federal labor law. Nor is the claim 'inextricably intertwined with consideration of the terms of the labor contract.' " *Tisdale,* 25 F.3d at 1311 (quoting *Allis–Chalmers,* 471 U.S. at 213, 105 S.Ct. at 1912).

Lastly, defendants characterize plaintiff's removal of all counts except for the Elliott–Larsen count as an "overt act of forum manipulation" which "should not be condoned by this court." Defendants, however, ignore the following language from the Supreme Court in *Caterpillar:*

> [T]he presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, *and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court. . . .* [A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.

*Caterpillar,* 482 U.S. at 398–99, 107 S.Ct. at 2433 (first emphasis added).

---

**3.** It should be noted that the cases relied upon by defendants, *Eitmann v. New Orleans Pub. Serv. Inc.,* 730 F.2d 359 (5th Cir.1984), and *Olguin v. Inspiration Consol. Copper Co.,* 740 F.2d 1468 (9th Cir.1984), are inapposite. They do not deal

with state-law civil rights claims and were decided before the Supreme Court's rulings in *Caterpillar* and *Lingle,* and the Sixth Circuit's rulings in *Smolarek* and *Tisdale,* which bind this court.

For the foregoing reasons, removal of this action, in light of the amended complaint, is improper.

### ORDER

Therefore, it is hereby **ORDERED** that plaintiff's motion to amend the complaint and plaintiff's petition for remand be **GRANTED.**

It is further **ORDERED** that the present action be **REMANDED** to the Circuit Court for the County of Oakland, Michigan.

**SO ORDERED.**