Gail WROBBEL, Plaintiff,

v.

ASPLUNDH CONSTRUCTION CORPO-
RATION, and International Brother-
hood of Electrical Workers, Local 17,
Defendants.

No. 07–CV–10988–DT.

United States District Court,
E.D. Michigan,
Southern Division.

April 24, 2008.

Deborah L. Gordon, Deborah L. Gordon Assoc., Bloomfield Hills, MI, for Plaintiff.

Frederic E. Champnella, Jr., Susan D. Koval, Keller Thoma, George H. Kruszewski, John R. Runyan, Jr., Sachs Waldman, Detroit, MI, for Defendants.

*OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND ORDER REMANDING CASE TO WAYNE COUNTY CIRCUIT COURT*

GERALD E. ROSEN, District Judge.

## I. *INTRODUCTION*

On January 5, 2007, Plaintiff Gail Wrobbel filed a one-count Complaint in this Court alleging that Defendants Asplundh Construction Company ("Asplundh")[1] and her Union, the International Brotherhood of Electrical Workers ("IBEW") Local 17, discriminated against her because of her sex in violation of Title VII of the Civil Rights Act of 1964, when the Union failed to refer her out to Asplundh, and Asplundh failed to hire her, for a position she applied for through the Union's "out-of-

1. A related company, Asplundh Tree Expert Company, was also originally named as a defendant but was subsequently dismissed on the stipulation of the parties.

work" referral list. *See Wrobbel v. Asplundh, et al.*, 07–CV–10110–DT.

Shortly thereafter, Plaintiff filed a second complaint against the same party-defendants in Wayne County Circuit Court. This second complaint was predicated upon the same factual allegations as the federal complaint but alleged a sex discrimination claim under the Michigan Elliott–Larsen Civil Rights Act. Defendants removed this second action to federal court on March 7, 2007 asserting federal question jurisdiction under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See Wrobbel v. Asplundh, et al.*, 07–CV–10998–DT, 2007 WL 4609302, 3/7/07 Notice of Removal. The case was subsequently reassigned to this Court as a "companion case" to the earlier-filed Title VII action.

Plaintiff thereafter filed the instant Motion to Remand the second complaint to State court. Defendants have responded and Plaintiff has replied. Having reviewed and considered the parties' briefs and the record of this matter, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II. *FACTUAL BACKGROUND*

Plaintiff Gail Wrobbel is a former employee of Harlan Electric Company and a member of IBEW Local 17. Plaintiff worked for Harlan for approximately ten years as an Operator/Material Handler/Yard Person, in which capacity she was responsible for maintaining one of the yards where Harlan's supplies and equipment were stored, loading and unloading trucks, and assisting crews who were performing overhead line construction and maintenance work pursuant to a contract Harlan held with Detroit Edison.

In March 2004, Harlan was not successful in its bid to continue performing overhead electrical line construction and maintenance work for Edison. Defendant Asplundh won the contract. As a result of losing the Edison contract, Harlan laid off all of its employees who had been performing Edison work, including Plaintiff Wrobbel. Plaintiff thereafter went to the offices of IBEW Local 17 and signed the "Out-of-Work List."

Asplundh is a signatory to the collective bargaining agreement ("CBA") covering utility power work entered into between the American Line Builders Chapter, NECA and IBEW Local 17. Section 3.02 of that agreement provides that Local 17 "shall be the sole and exclusive source of referrals of applicants for employment [by signatory members of the American Line Builders Chapter.]" The referral system provided in Article III of the CBA requires that employers needing workers advise the Business Manager of the Local Union of the number of applicants needed. The Business Manager, in turn, is to refer applicants to the requesting employer in the order of their place on the "Out-of-Work List." *See* CBA § 3.13. The employer, however, is not obligated to hire employees in any particular order and retains the right to reject any applicant. *Id.* § 3.03.

Plaintiff claims that Asplundh and Local 17 conspired to keep her from being "referred out" after she was laid off by Harlan, thereby preventing her from being hired by Asplundh as an operator/material handler/yard person (her former position with Harlan) or any other position/opening with the company. She alleges that a male applicant who had no prior experience as an operator/material handler/yard person was referred out by Local 17 and was hired by Asplundh to fill her former position.

Plaintiff is now suing Local 17 and Asplundh claiming that Asplundh and the union discriminated against her on the basis of her sex. As indicated, Plaintiff has filed two separate actions: one alleging a claim under Title VII of the Civil Rights Act of 1964, as amended, and the second one, which was originally filed in State court, alleging a claim under Michigan's Elliott–Larsen Civil Rights Act. It is this second Complaint that is at issue here.

Defendants removed Plaintiff's Elliott–Larsen Complaint on the basis of federal question jurisdiction arguing that Plaintiff's claim of discrimination against them is completely preempted by federal labor law. Plaintiff disputes Defendants' contentions and has moved to remand the case to State court.

### III. DISCUSSION

#### A. PLAINTIFF'S ELLIOTT–LARSEN COMPLAINT IS NOT "COMPLETELY PREEMPTED" UNDER FEDERAL LABOR LAW

#### 1. THE COMPLETE PREEMPTION DOCTRINE

■ A defendant may remove an action to federal court only if that court has original subject matter jurisdiction over the action.[2] If a court lacks diversity jurisdiction over an action, as in the instant case, it must have federal question jurisdiction over the action in order to have subject matter jurisdiction. A court has federal question jurisdiction over an action when that action "arises under" the Constitution or laws of the United States.[3] Generally, this "federal question" jurisdiction is governed by the well-pleaded-complaint rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Potential defenses, including a federal statute's preemptive effect, do not provide a basis for removal. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003); *Caterpillar*, 482 U.S. at 393, 107 S.Ct. 2425; *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 10, 12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Thus, because a plaintiff is the master of her complaint, she can generally choose to avoid federal jurisdiction by asserting only state law claims. *Caterpillar*, 482 U.S. at 398–99, 107 S.Ct. 2425; *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Alongi v. Ford Motor Co.*, 386 F.3d 716, 727–28 (6th Cir.2004); *Medlen v. Estate of Meyers*, —— Fed.Appx. ——, 2008 WL 961637 at *2 (Apr. 9, 2008).

■ The Supreme Court, however, has established an exception to the well-pleaded complaint rule: If Congress intends that a federal statute "completely preempt" an area of state law, any complaint alleging claims under that area of state law is presumed to allege a claim arising under federal law. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–1547, 95 L.Ed.2d 55 (1987). The complaint may thus be removed to federal court and will

---

**2.** 28 U.S.C. § 1441(a) states, in relevant part:

Except as otherwise expressly provided by Act of Congress, any civil litigation brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

**3.** 28 U.S.C. § 1331 reads:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

be treated as alleging a federal cause of action, notwithstanding that on its face, the plaintiff's complaint alleges only a state-law cause of action.

■ But the complete preemption doctrine is a very limited exception to the well-pleaded-complaint rule. *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 553 (6th Cir.2005). "Complete preemption" applies only in the extraordinary circumstance when Congress intends not merely to preempt a certain amount of state law, but also to transfer jurisdiction to decide the preemption question from state to federal courts. *See Metropolitan Life*, 481 U.S. at 65–66, 107 S.Ct. at 1547–48 (finding a statement of such intent in ERISA's legislative history); *Beneficial Nat. Bank*, 539 U.S. at 7–8, 123 S.Ct. 2058 (removal under complete preemption doctrine found proper where Congress provided for an exclusive federal cause of action for usury against national banks and also set forth procedures and remedies governing that cause of action). Without evidence of Congress's intent to transfer jurisdiction to federal courts, there is no basis for invoking federal judicial power. *Strong v. Telectronics Pacing Systems, Inc.*, 78 F.3d 256, 259 (6th Cir.1996).

The Supreme Court has "demonstrated a reluctance to extend application of the [complete preemption] doctrine, largely limiting its finding of complete preemption to a handful of federal statutes." *Palkow, supra*, 431 F.3d at 553. In fact, the Supreme Court has found only three statutes to have preemptive force so "extraordinary" that they can convert a state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule and provide the basis for removal jurisdiction: Section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185; the Employee Retirement Income Security Act of 1975 (ERISA), 29 U.S.C. §§ 1001–1461; and

Sections 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85, 86. *See Beneficial Nat. Bank, supra*, 539 U.S. at 7–9, 123 S.Ct. 2058; *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 563 (6th Cir.2007).

### 1. *SECTION 301 PREEMPTION*

■ In their Notice of Removal of Plaintiff's Elliott–Larsen Complaint, the only statute relied upon by Defendants was Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. [*See* Notice of Removal, § 6.] Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Section 301 of the LMRA reflects Congress' intent that a comprehensive, unified body of federal law should govern actions concerning the interpretation and enforcement of collective bargaining agreements made under the aegis of the Act. *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Since 1962, the Supreme Court has held that section 301 preempts state laws that substantially depend upon analysis of the terms of collective bargaining agreements. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985), (citing *Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)). However, in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Supreme Court made clear that

not every dispute relating to the terms of collective bargaining agreements is subject to § 301 preemption. In *Lingle* the Court explained:

> § 301 pre-emption ... says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements....
>
> Even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

486 U.S. at 409–10, 108 S.Ct. at 1883. As noted by the *Lingle* Court, an example of such "independent" claims which are not preempted under Section 301 are state laws that "grant nonnegotiable rights that are shared by all state workers." 486 U.S. at 407 n. 7, 108 S.Ct. at 1882 n. 7.

Applying *Lingle*, the Sixth Circuit has made clear that state anti-discrimination laws are not preempted under Section 301. This was clearly set forth by the Court in *Tisdale v. United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry, Local 704*, 25 F.3d 1308 (6th Cir.1994). In *Tisdale*, the Sixth Circuit reversed the district court's order granting removal of the plaintiffs' Elliott–Larsen race discrimination claim and remanded the case with instructions that the case be returned to state court for adjudication, explaining:

> Had plaintiffs brought a breach of contract action in state court alleging that the union had violated a provision in its constitution guaranteeing nondiscrimination, their claim properly understood would arguably have been removable because it would have been in an area occupied by federal law to the ex-

clusion of state law. That claim would have centered on interpretation of the union constitution and would therefore have arisen under federal law, even though pleaded as a state claim. But plaintiffs actually alleged disparate treatment under a state civil rights statute, not breach of the union constitution. As *Caterpillar* states, the fact that the defendant raises a federal preemption defense does not mean that this cause of action arises under federal law; nor does the fact that analysis of the union's preemption defense may require a court to interpret the union constitution.

\* \* \*

Put in more fundamental terms, we do not believe that the instant case is within the area which Congress meant to occupy in the Taft–Hartley [Labor Management Relations] Act. This is not fundamentally a labor case involving negotiated contractual terms, which is what § 301 addresses. This is a discrimination case involving non-negotiable rights guaranteed by the State of Michigan.

In fact, if any federal law were applicable here it would be not the Taft–Hartley Act but Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., which forbids racial and other discrimination by employers and labor organizations. Title VII specifically does not preempt state civil rights actions. **It should be self-evident that if Congress did not preempt state civil rights actions by operation of federal civil rights laws it could not have meant to do so through federal labor law. As the Supreme Court has stated, "it would be inconsistent with congressional intent under [§ 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract."**

*Id.* at 1311–12 (quoting *Allis–Chalmers v. Lueck,* 471 U.S. at 212, 105 S.Ct. at 1912 (emphasis added)). *See also, Smolarek v. Chrysler Corp.,* 879 F.2d 1326 (6th Cir. 1989) (*en banc*), *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989) (holding that an employee's state-law handicap discrimination claim that Chrysler illegally refused to return him to his former position because of his handicap was not preempted under § 301 even though Chrysler's defense was that it had acted properly under the collective-bargaining agreement); *O'Shea v. Detroit News,* 887 F.2d 683, 686–87 (6th Cir.1989) (plaintiff's Michigan age and handicap discrimination claim not preempted.).

The foregoing discussion makes clear to this Court that Plaintiff's Elliott–Larsen claim is not preempted under Section 301. And, with no preemption, there can be no "complete preemption" so as to support removal jurisdiction.

## 2. *NLRA PREEMPTION DOES NOT SUPPORT REMOVAL*

Although Defendants specifically relied only upon Section 301 of the LMRA in their Notice of Removal, in their Response to Plaintiff's Motion to Remand, they now advance a different basis for removal. Defendants now take the position that because a labor organization has a duty of fair representation under the National Labor Relations Act, 29 U.S.C. § 151, *et seq.,* which prohibits a union from taking action against any member based upon considerations or classifications which are irrelevant, invidious, or unfair, such as race or sex, state law does not afford Plaintiff any new rights she does not already have as a union member. As a consequence, Defen-

dants argue that Plaintiff's state law discrimination complaint, at least as against the union, must be deemed preempted.

Although two circuit courts—the First and the Fifth Circuit—have concluded that the duty of fair representation effects the same "complete preemption" as § 301, *see BIW Deceived v. Local S6,* 132 F.3d 824 (1st Cir.1997); *Richardson v. United Steelworkers,* 864 F.2d 1162 (5th Cir. 1989),[4] neither of these cases is binding upon this Court and this Court is not persuaded that these decisions represent the state of controlling law with respect to complete preemption.

■ The duty of fair representation is a corollary of the union's status as the exclusive representative of all employees in a bargaining unit. *Vaca v. Sipes,* 386 U.S. 171, 182, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). It is judicially created from § 9(a) of the NLRA, which requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.* at 177, 87 S.Ct. 903. *See also Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,* 493 U.S. 67, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989) ("The duty of fair representation ... has 'judicially evolved' as part of federal labor law.")

■ Defendants have not even attempted to demonstrate that Congress intended to completely preempt state law governing member/union relations when it enacted § 9(a), the showing which is required to establish complete preemption to justify removal of this case. *See Metropolitan Life Ins. Co. v. Taylor, supra,* 481 U.S. at

---

**4.** Neither *Richardson* nor *BIW Deceived* involved state law discrimination claims. The *Richardson* complaint alleged a claim of "negligent breach of a Texas common-law tort duty owed by a union to its members";

*BIW Deceived* involved a state law tort action alleging that union made false representations regarding duration of their employment as electricians and pipefitters.

66, 107 S.Ct. 1542 ("[T]he touchstone of the federal district court's removal jurisdiction is not the "obviousness" of the preemption defense but the intent of Congress.") This is perhaps not surprising, since the fact that the federal duty of fair representation is a *judicial* creation tends to undermine the argument that *Congress* intended § 9(a) to supplant state law with a federal cause of action.[5]

Defendants' reliance upon *Maynard v. Revere Copper Products, Inc.*, 773 F.2d 733 (6th Cir.1985), is misplaced. In that case, the plaintiff filed an action in state court alleging *two* counts—a state law claim of handicap discrimination under the Michigan Handicappers' Civil Rights Act (now known as the Persons with Disabilities Civil Rights Act) *and* a claim of breach of duty of fair representation. Thus, on its face, Maynard's complaint alleged a federal claim (breach of the duty of fair representation), entitling Defendants to remove the case to Federal court. The "complete preemption" exception to the "well-pleaded complaint rule" played no part in the court's ruling.

That the *Maynard* court ultimately found plaintiff's Handicappers' claim preempted[6] and affirmed dismissal of that claim by virtue of the six-month statute of limitations which barred plaintiff's DFR claim does not equate with a ruling that a one-count state law discrimination complaint may be *removed* on the basis of federal labor law. "Preemption and removal are related but distinct concepts." *Tisdale v. Local 704, supra,* 25 F.3d at 1311.

As the Supreme Court stated in rejecting the defendant's alternative argument in *Caterpillar, Inc. v. Williams, supra,* that, if Section 301 preemption did not provide a basis for removal (and the Supreme Court ultimately concluded it did not), preemption under § 9(a) of the NLRA might do so, "**[t]he fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does *not* establish that they are removable to federal court.**" 482 U.S. at 398, 107 S.Ct. at 2432 (emphasis in original). "These [preemption arguments] are questions that must be addressed ... by the state court in which [plaintiffs] filed their claims." *Id.* at 398 n. 13, 107 S.Ct. at 2433 n. 13. *See also Alongi v. Ford Motor Co.*, 386 F.3d 716, 728 (6th Cir.2004) (holding that because there was no complete preemption of any of the counts in the plaintiff's complaint, removal was improper, and "[a]s a consequence of that holding, we have no jurisdiction to consider whether any of the claims may be preempted by § 7 and § 8 of the National Labor Relations Act; the matter is for the state courts to consider.")

Based upon the foregoing the Court holds that Defendants' removal of Plaintiff's state law discrimination claim on the basis of "complete preemption" under Sec-

---

5. Furthermore, even accepting Defendants' contention that the duty of fair representation effects the same preemptive force as § 301 of the LMRA, it would be anomalous for the Court to find a state law discrimination claim preempted under the duty of fair representation when both the Supreme Court and the Sixth Circuit have expressly determined that state civil rights laws are *not* preempted under Section 301. *See Lingle, supra,* 486 U.S. at 407 n. 7, 108 S.Ct. at 1882 n. 7; *Tisdale, supra,* 25 F.3d at 1311–12.

6. Subsequent Supreme Court and Sixth Circuit cases, however, appear to have abrogated this aspect of the court's holding in *Maynard. See Jones v. Cassens Transport*, 982 F.2d 983, 987 and n. 3 (6th Cir.1993) (*"Jones II "*) (noting that *Lingle* and post-*Lingle* Sixth Circuit decisions "cast doubt" on the court's earlier decisions finding state law discrimination claims preempted.)

tion 301 of the LMRA and/or Section 9(a) of the NLRA was not proper.

## B. *PENDENT JURISDICTION BASED ON PLAINTIFF'S SEPARATELY FILED TITLE VII ACTION DOES NOT SUPPORT REMOVAL*

Although never argued as a basis for removal of Plaintiff's state law complaint, at the consolidated case scheduling conference held by the Court in this matter, the possibility was discussed as to whether supplemental jurisdiction-based upon Plaintiff's separately—filed Title VII action—might support removal of this case, even if the other arguments raised by Defendants did not. There is no legal merit in this contention.

 To justify removal, a defendant cannot rely on supplemental jurisdiction as the sole basis for subject-matter jurisdiction. *Ahearn v. Charter Twp. of Bloomfield,* 100 F.3d 451, 456 (6th Cir.1996) ("The supplemental-jurisdiction statute is not a source of original subject-matter jurisdiction, and a removal petition therefore may not base subject-matter jurisdiction on the supplemental jurisdiction statute, even if the action which a defendant seeks to remove is related to another action over which the federal district court already has subject-matter jurisdiction.") (citations omitted); *see also In re Estate of Tabas,* 879 F.Supp. 464, 467 (E.D.Pa.1995) ("the supplemental jurisdiction statute does not allow a party to remove an otherwise unremovable action to federal court for consolidation with a related federal action," even if "such an approach would have the benefits of efficiency"); *Brown v. Prudential Insurance Company,* 954 F.Supp. 1582, 1584 (S.D.Ga.1997) (same); *Sebring Homes Corp. v. T.R. Arnold & Assocs.,* 927 F.Supp. 1098, 1101 (N.D.Ind.1995) (same); *Zewe v. Law Firm of Adams & Reese,* 852 F.Supp. 516, 520 (E.D.La.1993) (same); *Holt v. Lockheed Support Sys., Inc.,* 835

F.Supp. 325, 329 (W.D.La.1993) (same); *In re Dow Corning Corp.,* 187 B.R. 934, 938 (E.D.Mich.1995) (same).

The unavailability of supplemental jurisdiction as the basis for removal jurisdiction is illustrated in *Ahearn.* In *Ahearn,* property owners filed an action in state court against their township objecting to an assessment levied against them to pay for new sewage treatment facilities used to treat discharge into the Rouge River. The township removed the case to federal court on the ground that the underlying dispute was based on the same nucleus of operative facts as a federal action, *United States v. Michigan ("Michigan"),* which was already pending in the district court. In *Michigan,* the United States had alleged that local and state governments had violated the Clean Water Act by polluting the Rouge River. The defendant in *Ahearn* argued that the *Ahearn* action was based on the same underlying factual basis as *Michigan,* and therefore, the court could exercise supplemental jurisdiction over *Ahearn.* The district court agreed and denied remand. The Sixth Circuit reversed and found that there was no basis for removal jurisdiction over the *Ahearn* action. The appellate court explained:

. . . The action before us was filed in state court. The removal statute allows removal only of a "civil action brought in State court of which the district courts have *original jurisdiction . . . .*" The supplemental jurisdiction statute is not a source of original subject matter jurisdiction, and a removal petition therefore may not base subject matter jurisdiction on the supplemental jurisdiction statute.

Absent complete pre-emption, the plaintiffs in a nondiversity action are masters of their complaint and may avoid federal subject-matter jurisdiction by relying exclusively on state law. Complete pre-emption is not at issue in

this action. At the time of removal, the plaintiffs' complaint asserted no claim giving the district court diversity or federal-question jurisdiction, so the plaintiffs have properly avoided federal subject-matter jurisdiction.

The district court therefore erred in denying the plaintiffs' motion to remand. Without proper removal, a state-court action does not belong in federal court in the first place, and it is wrong to even consider supplemental jurisdiction.

100 F.3d at 456 (emphasis in original; citations omitted).

Just as in *Ahearn*, as discussed above, Plaintiff's state law complaint is not completely preempted under federal law, and does not provide a basis for diversity or federal question jurisdiction.

### CONCLUSION

For all of the foregoing reasons, the Court concludes that there is no basis for federal subject matter jurisdiction over Plaintiff's Elliott–Larsen complaint. Therefore,

IT IS HEREBY ORDERED that Plaintiff's Motion to Remand [**Dkt. #13**] is GRANTED. Accordingly,

IT IS FURTHER ORDERED that this case, Civ. No. 07–10988, be REMANDED to the Wayne County Circuit Court.

■ Lacking jurisdiction over Plaintiff's Complaint, the Court is without authority to rule on the Union's Motion to Dismiss. *See Baldridge v. Kentucky–Ohio Transp., Inc.*, 983 F.2d 1341, 1344 (6th Cir.1993) ("If the court rules that the claim is not 'completely preempted,' the federal court lacks jurisdiction to rule on the substantive preemption defense.") *Id.* (quoting *Whitman v. Raley's, Inc.*, 886 F.2d 1177, 1180 (9th Cir.1989)); *Memphis American Fed. of Teachers Local 2032 v. Board of Education*, 534 F.2d 699, 701 (6th Cir.1976) ("Without a finding that there is federal jurisdiction over a particular claim for re-

lief, the federal courts are without power to proceed"); *Godsey v. Miller*, 9 Fed. Appx. 380 (6th Cir.2001) ("[W]ithout subject-matter jurisdiction, the court was without power to decide any substantive motion on the merits of the case.") Therefore,

IT IS FURTHER ORDERED that Defendant IBEW Local 17's Motion for Partial Dismissal [**Dkt. #16**] is dismissed, without prejudice. The Court expresses no view on the merits of Defendants' substantive preemption defenses. It will be for the State court to decide those issues.

SO ORDERED.