**Randall W. PEARSON, Plaintiff–Appellant/Cross–Appellee,**

v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA; United Automobile Workers Local 140; Roy Wyse; Stephen Yokich, Defendants–Appellees/Cross–Appellants.**

Nos. 01–2078, 01–2081, 02–1929.

United States Court of Appeals, Sixth Circuit.

April 28, 2004.

William M. Hatchett, Hatchett, Dewalt & Hatchett, Pontiac, MI, for Plaintiff-Appellant/Cross–Appellee.

Roger J. McClow, Klimist, McKnight, Sale, McClow & Canzano, Southfield, MI, for Defendants–Appellees/Cross–Appellants.

Before BOGGS, Chief Judge; and GUY and DAUGHTREY, Circuit Judges.

BOGGS, Chief Judge.

Plaintiff-appellant/cross-appellee, Randall W. Pearson, appeals the district court's July 11, 2001 order, dismissing three of his claims against defendants-appellees/cross-appellants, International Union, United Automobile, Aerospace and Agricultural Workers of America ("UAW"); Local 140; Roy Wyse; and Stephen Yokich (collectively, "the union"). The union cross-appeals the order because two of the claims were dismissed without prejudice rather than with prejudice. Pearson also appeals the district court's July 9, 2002 order, dismissing one of his claims against the union with prejudice. Stephen Yokich was the president of the UAW (he is now deceased). Roy Wyse is the former Secretary–Treasurer of the UAW.

## I. Facts and Procedural History

Pearson served as President of Local 140 from March 1991 until September 1997, when he was removed from office. In early 1996, the UAW hired auditors to audit Local 140's financial records. Pearson was informed that the audit showed that he had received income in excess of the allowable compensation for a local union president. Pearson disagreed with the interpretation of the local union's bylaws, but signed a restitution agreement in August 1997, agreeing to repay the alleged excess. Pearson claims that, in return for signing the agreement, he was promised that he would not be removed from office for financial misconduct under the provisions of the UAW Constitution. In September 1997, the auditors filed a claim with the UAW'S bonding company, which resulted in the revocation of Pearson's fidelity bond. Shortly thereafter, Yokich, as president of the UAW, removed Pearson from office because he had been declared not bondable. On the same day, Yokich informed Pearson that financial-misconduct proceedings had been commenced against him, pursuant to the UAW Constitution.

Pearson appealed his removal to the UAW's International Executive Board. The UAW notified Pearson in October 1997 that his appeal had been accepted for review by the International Executive Board. In June 1998, while his administrative appeal was still pending, Pearson filed suit in the United States District Court of the Eastern District of Michigan, alleging breach of contract. He now claims that he believed that his administrative appeal was futile, due to the UAW's failure to comply with the time limit set forth by its constitution.

The International Executive Board held a hearing on Pearson's appeal, and issued a decision denying his appeal in October 1998. Pearson appealed to the UAW's Public Review Board in November 1998.

On May 6, 1999, the district court dismissed Pearson's lawsuit for failure to exhaust his administrative remedies and, in the alternative, the district court granted summary judgment to the union on the basis that no genuine issues of material fact existed and, as a matter of law, Pearson could not prevail.

In June 1999, the UAW's Public Review Board ruled in favor of Pearson, holding that the UAW could not interpret a local union's bylaws to impose an income limitation on a local union officer. There is no information in the record regarding what remedy Pearson was afforded.

In October 2000, Pearson filed a complaint against the union in Michigan state court, alleging breach of contract, breach of fiduciary duty, and defamation. The contract claim alleged that the defendants violated the UAW Constitution and breached the restitution agreement by removing him from the office of president. The union removed the action to federal court. In November 2000, the district court remanded Pearson's breach of fiduciary duty and defamation claims to state court and retained jurisdiction over only his breach of contract claim. The court reasoned that it had jurisdiction over the breach of the UAW Constitution claim pursuant to § 301 of the Labor Management Relations Act. It declined to exercise supplemental jurisdiction over the state law claims because such claims would result in the undue confusion of the jury.

In February 2001, Pearson filed another complaint with the federal district court, asserting again that the union breached the UAW Constitution when he was removed from office. In March, he amended his complaint in state court to allege breach of the union constitution, defamation, and breach of fiduciary duty claims. It also added claims for fraud and intentional misrepresentation and intentional infliction of emotional distress.

The union filed a motion for summary judgment in federal district court as to the breach of constitution claim on March 23, 2001. A week later, the union again removed to federal court the state court action that had been remanded there in November 2000. In May 2001, the district court entered an order retaining the breach of contract, fraud and intentional misrepresentation, and intentional infliction of emotional distress claims as preempted by § 301 of the LMRA, and remanded the defamation and breach of fiduciary duty claims to state court. The district court also consolidated the cases that were pending in federal court.

On June 14, 2001, the district court granted the union's motion for summary judgment as to the breach of constitution claim, concluding that its May 6, 1999 decision barred the claim because of the doctrine of res judicata or, more specifically, claim preclusion. The court then decided that because the preempted breach of constitution claim had been dismissed, it no

longer had jurisdiction over the fraud and intentional misrepresentation and intentional infliction of emotional distress claims, and remanded them to state court.

On June 20, 2001, the union filed a motion for reconsideration of the June 14, 2001 order, asserting that the court should have dismissed rather than remanded the fraud and intentional misrepresentation and intentional infliction of emotional distress claims because the court had already decided they were preempted. The court granted this motion on July 11, 2001, vacated its previous order remanding Pearson's claims, and entered a judgment dismissing them without prejudice as preempted.

On July 26, 2001, Pearson appealed to this court from the July 11, 2002 order. On August 8, 2001, the union cross-appealed the same order, contending that the order of dismissal should have been with prejudice.

On July 25, 2001, Pearson filed another motion to amend his complaint in state court. He reasserted his fraud and intentional misrepresentation and intentional infliction of emotional distress claims (his defamation and breach of fiduciary duty claims were still pending there). On August 8, 2001, the union again removed the action to the district court. On August 30, 2001, the district court again remanded the defamation and breach of fiduciary duty claims to state court, but retained the fraud and intentional infliction of emotional distress claims on the ground that they were preempted by § 301.

Pearson filed a motion in district court to remand the fraud and intentional infliction of emotional distress claims to state court. The union filed a motion to dismiss both claims with prejudice. In an order dated October 23, 2001, the district court denied Pearson's motion to remand and granted the union's motion to dismiss the claims with prejudice. The court construed these motions as effective objections to its July 11, 2001 order. The court decided that the fraud and intentional infliction of emotional distress claims were still preempted, and moreover, were barred by claim preclusion. The court concluded that Pearson could have raised these preempted claims when he filed his initial complaint in federal district court in 1998. Pearson did not appeal from this judgment.

The union then conducted depositions in the state court case. Pearson testified in his deposition that the source of the duty underlying his breach of fiduciary duty claim was the UAW Constitution. Based on this deposition testimony, the union removed the case again to federal court. The union filed a motion for summary judgment, and Pearson filed a motion to remand. On March 20, 2002, the district court denied Pearson's motion to remand. On July 9, 2002, the district court granted the union's motion for summary judgment as to the breach of fiduciary duty claim, stating that it was barred by res judicata. The court found that Pearson could have brought the claim when he filed his initial suit in 1998. The district court also remanded the defamation claim to state court.

Pearson timely appealed the July 9, 2002 order. As noted above, also before the court is Pearson's appeal of the July 11, 2001 order, and the union's cross-appeal of the same.

## II. The July 11, 2001 Order

### A. Pearson's Appeal

#### 1. Res judicata

■ Although Pearson argues that the district court erred in dismissing his breach of constitution claim on the grounds of res judicata, we need not reach

the merits of that question. As stated above, in its June 14, 2001 decision, the district court—citing the doctrine of res judicata—dismissed the breach of constitution claim and then remanded the two state law issues involving claims of fraud and intentional misrepresentation and of intentional infliction of emotional distress to the state court. The defendants then filed a motion to reconsider *only the latter ruling*, contending that remand of the state law claims was improper because they were preempted by federal law. The district court granted the motion for reconsideration on July 11, 2001, ordering that the state law claims be "dismissed without prejudice."

Both sides then filed notices of appeal, but those notices specifically appeal from the district court's order of July 11, 2001, *and not from the order of June 14, 2001.* Thus, under Federal Rule Appellate Procedure 3(c)(1)(B), the only issue properly before us is the judgment entered on July 11 that explicitly incorporated only part of the June 14 order—the part that dismissed the state law claims without prejudice. Rule 3(c)(1)(B) requires the notice of appeal to "designate the judgment, order, or part thereof being appealed." As this court has explained, "[i]f an appellant . . . chooses to designate specific determinations in his notice of appeal—rather than simply appealing from the entire judgment—only the specified issues may be raised on appeal." *McLaurin v. Fischer*, 768 F.2d 98, 102 (6th Cir.1985). *See also United States v. Universal Mgmt. Servs., Corp.*, 191 F.3d 750, 757 (6th Cir.1999) (citing *McLaurin*) ("Because the notice of appeal references only the district court's summary judgment rulings, we do not have jurisdiction to consider issues raised in the Motion for Reconsideration."). The requirements of Rule 3 are jurisdictional, and may not be waived. *See Universal Mgmt. Services, Corp.*, 191 F.3d at 756–57

(6th Cir.1999). Because the plaintiff failed to appeal the June 14 order, we have no jurisdiction to consider his claim with respect to the alleged breach of constitution, which was not included in the July 11 order.

### 2. Preemption

This court reviews *de novo* a district court's decision that an action is preempted. *See King v. Ford Motor Co.*, 209 F.3d 886, 891 (6th Cir.2000). A state law claim is preempted if resolution of the state law claim is substantially dependent on analysis of a § 301 contract. *See Allis–Chalmers v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). We have established a two-step approach to determining whether § 301 preemption applies:

> First, the district court must examine whether proof of the state law claim requires the interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both is borne [sic] of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted.

*DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir.1994) (citations omitted).

The district court concluded that Pearson's fraud and intentional misrepresentation claim was preempted because it was based on alleged misrepresentations made by the union to Pearson in order to induce him to sign a restitution agreement and because the restitution agreement was a "contract" under § 301. It held that his claim for intentional infliction of emotional distress arose out of the union's alleged

failure to follow due process provisions in the UAW Constitution.

Section 301(a) of the LMRA provides for federal jurisdiction of "[s]uits for violation of contracts between an employer and a labor organization representing employees ... or between any such labor organizations." 29 U.S.C. § 185(a). The Supreme Court has held that a union constitution is a contract within the meaning of § 301. *See United Ass'n of Journeymen and Apprentices v. Local 334,* 452 U.S. 615, 619, 627, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981) (noting that the union constitution at issue could be fairly characterized as a contract between labor organizations, and describing a union constitution as a "fundamental agreement of association"). The Supreme Court has also held that the word "between" in § 301 refers to "contracts" not "suits." *See Smith v. Evening News Ass'n,* 371 U.S. 195, 200–01, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). And finally, the Supreme Court also has held that subject matter jurisdiction under § 301 extends to suits regarding union constitutions brought by individual union members. *See Wooddell v. Int'l Bhd. of Elec. Workers, Local 71,* 502 U.S. 93, 103, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991). However, *Wooddell* restricted the scope of § 301 in dealing with union constitutions to suits alleging a breach that violates a contract between two labor organizations. *Id.* at 98 n.3. The Court stated: "[A] suit properly brought under § 301 must be a suit either for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce or for violation of a contract between such labor organizations." *Id.* at 98.

### a. fraud and intentional misrepresentation claim

■ In Michigan:

The general rule is that to constitute actionable fraud it must appear: (1)

That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.

*Hi–Way Motor Co. v. Int'l Harvester Co.,* 398 Mich. 330, 247 N.W.2d 813, 816 (1976) (quoting *Candler v. Heigho,* 208 Mich. 115, 175 N.W. 141, 143 (1919)). Pearson's claim is based on alleged misrepresentations made by the union to Pearson to induce him to sign the restitution agreement.

The district court concluded that this agreement was a contract under § 301. The court quoted *In re Gen. Motors Corp.,* 3 F.3d 980 (6th Cir.1993), which stated that "[t]he term 'contract' as used in section 301 of the LMRA is not limited to collective bargaining agreements, but can embrace understandings other than those usually understood as collective bargaining agreements." *Id.* at 983. The restitution agreement has not been included in the Joint Appendix, so it is difficult to determine whether it is a "contract" within the meaning of § 301. However, if it was signed only by Pearson and the UAW, it would not be a contract between an employer and a labor organization representing employees, nor would it be a contract between labor organizations. Not all contracts involving unions, members, and employers are § 301 contracts, *see Caterpil-*

*lar Inc. v. Williams,* 482 U.S. 386, 396, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (holding that individual employment contracts between union members and employer were not § 301 contracts), and the record in this case suggests that this agreement is likewise not a § 301 contract.

Moreover, it is not clear how analysis of the elements of fraud and intentional misrepresentation under Michigan law would require a court to analyze the restitution agreement. Pearson would have to establish that the union made a material representation (that if Pearson signed the contract, he would not be removed as President), that the representation was false (that he signed the contract and was later removed), that the union knew the representation was false, that Pearson relied upon that representation, and that Pearson suffered damage. No analysis of the contract's terms is necessary to show the above.

The district court erred in deciding that Pearson's fraud and intentional misrepresentation claim was preempted by federal labor law.

### b. intentional infliction of emotional distress

■ In Michigan, a plaintiff can establish a claim for intentional infliction of emotional distress by showing: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford,* 237 Mich.App. 670, 604 N.W.2d 713, 716 (1999). Pearson claims that his complaint was based on the union's outrageous act of unjustly revoking his bond. He further claims that the allegations can be proved by looking at the correspondence between the union and the bonding agency.

However, Pearson's first amended complaint filed in state court alleged that the union "undermine[d] the due process requirements contained in the UAW Constitution" by filing the claim prematurely, "prior to the adjudication of guilt or innocence required under the UAW Constitution." While the plaintiff is usually master of the complaint, "the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of [§ 301] contracts...." *Caterpillar,* 482 U.S. at 394. Pearson's intentional infliction of emotional distress claim would require a court to analyze the terms of the UAW Constitution. The district court did not err when it found that this claim was preempted.

### 3. Reconsideration of the remand order

■ 28 U.S.C. § 1447(d) states that: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise,...." Pearson argues that the district court's July 11, 2001 reconsideration of its remand order was a review.

However, Rule 59(e) of the Federal Rules of Civil Procedure gives a party ten days in which to bring a motion to reconsider a judgment. Because the defendants filed a timely motion to reconsider, the order to remand was not final, and the claims had not yet been remanded. The district court had the authority to reconsider its own order, and Pearson's appeal on this point is without merit.

### B. The union's appeal

■ Although the union cross-appealed on this issue, no argument appears in its brief. The union appears to have voluntarily abandoned this appeal. Instead of arguing its appeal, the union argues that all disputes involving the dismissal of the claims are moot. The union argues that

the October 23, 2001 order that dismissed these claims with prejudice moots Pearson's appeal as well as its cross-appeal. It argues that an appeal should be dismissed as moot if an event occurs that precludes the court from granting effective relief. *In re Eagle Picher Indus., Inc.*, 172 F.3d 48 (6th Cir.1998) (unpublished decision). The union finally argues that Pearson cannot recover on the dismissed claims no matter what this court decides.

The union's arguments regarding mootness are well-taken. It appears that the district court likely erred in deciding that Pearson's fraud and intentional misrepresentation claim was preempted, yet the claim has been dismissed with prejudice on other grounds in the district court's October 23, 2001 order. Pearson did not appeal from the October 23, 2001 order that disposed of that claim and his intentional infliction of emotional distress claim. Thus, the appeal and cross-appeal regarding these two claims are dismissed as moot as this court cannot grant effective relief to either party.

### III. Pearson's appeal of the July 9, 2002 Order

■ This court reviews a district court's grant or denial of summary judgment *de novo*. *See Dudley v. Eden*, 260 F.3d 722, 725 (6th Cir.2001). The district court granted summary judgment after it concluded that Pearson's breach of fiduciary duty claim was barred by res judicata (claim preclusion). The district court stated in its July 9, 2002 order that Pearson's "breach of fiduciary duty claim turn[ed] on the same events and § 301 contract that were addressed in the June 14, 2001 opinion and order of this [c]ourt." It added: "Clearly, [Pearson] could have raised this ... claim when he filed his initial complaint in 1998."

Res judicata bars a claim if there exists "(1) a final decision on the merits; (2) a subsequent action between the same parties or their privies; (3) an issue in a subsequent action which should have been litigated in the prior action; and (4) an identity of the causes of action." *Wilkins v. Jakeway*, 183 F.3d 528, 532 (6th Cir. 1999).

The district court's May 6, 1999 opinion and order first held that Pearson's complaint was dismissed for failure to exhaust his intra-union remedies. It then went on to hold that even had Pearson exhausted his intra-union remedies, the union was entitled to summary judgment because the UAW was entitled to interpret its own constitution, that Pearson's claim that the union's stated reasons for terminating him were mere pretext must fail, that Pearson had failed to present a genuine issue of material fact, that Pearson had failed to show that the union's reading of the UAW Constitution was unreasonable, and that Pearson had failed to show that Yokich's decision was anything other than reasonable.

"When a district court's ruling rests on alternative grounds, at least one of which is based on the inability of the court to reach the merits, the judgment should not act as a bar in a future action." *Remus Joint Venture v. McAnally*, 116 F.3d 180, 184 n. 5 (6th Cir.1997) (citing *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 119 (4th Cir.1989)).

> If a first decision is supported both by findings that deny the power of the court to decide the case on the merits and by findings that go to the merits, preclusion is inappropriate as to the findings on the merits. A court that admits its own lack of power to decide should not undertake to bind a court that does have power to decide.

18 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 4421, at 207 (2d ed.1981).

Because one of the primary grounds upon which the district court rested in dismissing Pearson's action was his failure to exhaust his administrative remedies, the district court erred in holding that it had previously reached a final decision on the merits. Thus, it should not have barred Pearson's successive claim on res judicata grounds.

One reason for following this rule is that it reduces the number of frivolous appeals. For example, assume that in a given case, the district court dismisses a complaint on two alternative grounds—one on the merits, and another not on the merits (such as failure to exhaust administrative remedies). Even though the first ground (on the merits) may be questionable, a plaintiff would be discouraged from appealing the decision if the second ground was clearly correct. Under the current rule, because the court's dismissal would not preclude a future action, the controversy could be subsequently resolved by other means, such as administrative remedies, which would make an appeal unnecessary. If, however, the district court's dismissal *did* preclude all future actions, the plaintiff would be forced to appeal the initial ground for decision even if he or she would prefer not to appeal. In addition, it is possible that, if the court's ground for decision *not* on the merits was clearly correct, the court might devote less thought

and effort to the ground for decision on the merits, even though that ground creates the basis for preclusion. *See* Restatement (Second) of Judgments, § 20 cmt. e.[1]

Pearson also argues in his brief that the district court erred when, on March 20, 2002, it denied his motion to remand his breach of fiduciary duty claim. However, Pearson's notice of appeal states: "Appeal is hereby taken against the above-named defendants from the Opinion and Order dated July 9, 2002, which was issued in the United States District Court, Eastern District of Michigan, Southern Division." Federal Rule of Appellate Procedure 3(c) states that the notice of appeal must "designate the judgment order, or part thereof being appealed . . . ." Fed. R.App. P. 3(c)(1)(B). The requirements of Rule 3 are jurisdictional, and may not be waived. *United States v. Universal Mgmt. Services, Corp.*, 191 F.3d 750, 756–57 (6th Cir.1999). Pearson failed to perfect an appeal of the March 20, 2002 order, and this court does not have jurisdiction to review it.

## IV. Conclusion

The district court erred in dismissing Pearson's breach of fiduciary duty claims as barred by res judicata. We therefore REVERSE the district court's order dismissing this claim, and REMAND the claim to the district court for proceedings consistent with this opinion. We AF-

---

**1.** Comment (e) explains: "A dismissal may be based on two or more determinations, at least one of which, standing alone, would not render the judgment a bar to another action on the same claim. In such a case, if the judgment is one rendered by a court of first instance, it should not operate as a bar. Even if another of the determinations, standing alone, would render the judgment a bar, that determination may not have been as carefully or rigorously considered as it would have if it

had been necessary to the result, and in that sense it has some of the characteristics of dicta. And, of critical importance, the losing party, although entitled to appeal from both determination, may be dissuaded from doing so as to the determination going to the 'merits' because the alternative determinations, which in itself does not preclude a second action, is clearly correct. The rules of res judicata should not encourage or foster appeals in such instances."

FIRM the remainder of the district court's decision.