**NOT RECOMMENDED FOR PUBLICATION**
File Name: 07a0010n.06
Filed: January 5, 2007

**Nos. 05-4177, 05-4178, and 06-3100**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

GREGORY GILREATH,

      Plaintiff-Appellant,

v.

CLEMENS & COMPANY, et al.,

      Defendants-Appellees.

                                     /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

BEFORE:    CLAY and ROGERS, Circuit Judges; KATZ, District Judge.[*]

    **CLAY, Circuit Judge.**  Plaintiff-Appellant, Gregory Gilreath, appeals from the district court's grant of summary judgment to Defendants-Appellees, Clemens & Company and Donnell, Inc. (hereinafter "Defendant Company") and the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local 162, AFL-CIO (hereinafter "Defendant Union" or "the Union"), on Plaintiff's claims of breach of contract, breach of fair representation, promissory estoppel, public policy tort, intentional infliction of emotional distress, and alleged violations of the Ohio Whistleblowers' Protection Act. Plaintiff-Appellant

---

    [*]The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

further appeals both the district court's award of Rule 11 sanctions in favor of Defendants-Appellees and the amount of those sanctions. For the reasons set forth below, we **AFFIRM** the district court's grant of summary judgment, as well as its award of sanctions and the order setting the amount of those sanctions.

## BACKGROUND

### A.     Substantive Facts

Plaintiff became a member of Defendant Union sometime in or around 1990. At that time, he worked as an apprentice and largely found jobs through the Union's "hiring hall" referral system. Approximately six years later, in 1996, Plaintiff became a journeyman. He continued to obtain Union referrals for employment. Beginning in 1999, Plaintiff principally worked as a foreman or a superintendent on various job sites.

Defendant Company hired Plaintiff through the Union referral system in July 2001. At that time, Defendant Company did not need Plaintiff for a specific job site, but rather for general assignments. In June 2002, Plaintiff began work as a foreman on Defendant Company's Central State University job site (hereinafter "CSU site"). Defendant Company, as a member of the Mechanical Contractors Association of Greater Dayton, entered into a multi-employer collective bargaining agreement (hereinafter "CBA") with Defendant Union, with effective dates of June 1, 2002 through May 31, 2007. Because Plaintiff was a union member, the terms of this CBA governed Plaintiff's employment with Defendant Company.

In pertinent part, the CBA provides as follows:

ARTICLE VI

2

HIRING AND SEPARATION OF EMPLOYEES

(A)     The Employer shall be the sole judge of the number of journeymen Employees required to perform his work . . .

* * *

(D)     The Employer shall retain the right to reject any applicant referred by the Union . . .

* * *

(F)     Employment of Apprentices shall be governed by the terms and conditions of the Apprenticeship Standards of the Dayton, Ohio Joint Apprenticeship Committee which is a material and substantial part of this Agreement. . . .

* * *

ARTICLE VII
HOURS OF WORK – OVERTIME – REPORTING TIME
* * *

(E)     The overtime rate shall be paid on the actual time worked basis. The amount of overtime and the personnel who work overtime are the prerogatives of the Employer. However, the Employer will normally use the Employees on that job to perform any overtime on that job.

* * *

ARTICLE IX
WAGES AND RELATED MATTERS
* * *

(I)     Foreman and/or General Foreman so designated and selected by the Employer, and whether a member of the Union or not, shall act as agent of the Employer only, and shall not apply or attempt to apply any regulation, rule, bylaw or provision of the Union constitution in any respect, or any obligation of Union membership.

        The Employer may request a Journeyman Plumber, Pipefitter or Refrigeration applicant by name from any position on the out-of-work list for the purpose of having that applicant serve as a Foreman or General Foreman on a particular job, and such applicant shall, when selected as a Foreman or General Foreman, serve in such capacity until that particular job is completed. If an Employee is selected as a Foreman or General Foreman under these circumstances, and is later transferred from that job before it is completed, the Employee must remain as a Foreman for the Employer on the job to which he was transferred, or be returned to the Union Hall. If the requested employee works sixty (60) or more cumulative days, exclusive of overtime, and the job is completed, the Employee may remain in the employment of the Employer in a Journeyman status. If the requested Employee works less than sixty (60) days, exclusive of overtime, and is returned to the Union Hall, he will not

3

be entitled to recall rights as a Journeyman to the Employer who returns him to the Union Hall.

\* \* \*

(N)     The Employer must carry Workers' Compensation, Unemployment Compensation, and comply with all local, state, and federal regulations governing the employment of labor; including state and federal laws and regulations relating to job safety and safe work practices.

\* \* \*

(J.A.2d at 84)[1] Additionally, since Article VI of the CBA incorporates the Plumbing and Pipefitters Dayton Area Apprenticeship Standards (hereinafter "the Standards") in its entirety, the Standards also govern Plaintiff's employment. Relevant portions of the Standards follow:

PLUMBERS AND PIPEFITTERS DAYTON AREA APPRENTICESHIP STANDARDS
\* \* \*

Section 16  RATIO OF APPRENTICE TO JOURNEYMEN

A.     The specific ratio of apprentices to journeymen that shall apply in the area covered by these standards. Every shop, which employs one or more journeymen on a regular basis, may employ apprentices as per the following ratio:

1        Journeyman — 1 Apprentice
2 - 4    Journeymen — 2 Apprentices
5 - 7    Journeymen — 3 Apprentices
8 - 10  Journeymen — 4 Apprentices, etc.

Section 17  WORK EXPERIENCE
\* \* \*

B.     To enable the apprentice to qualify at the end of his apprenticeship as a skilled journeyman the apprentice shall, during the apprenticeship be given opportunity to assist installing and to install piping material, as his skill permits, under the direct supervision of a journeyman.

C.     During the fifth year, the apprentices may be allowed to make installations consisting of installing pipe, setting plumbing fixtures and appliances, and doing related work as their acquired skills permit without the direct supervision of a journeyman.

\* \* \*

---

[1]Because Plaintiff's cases were consolidated, there are two separate Joint Appendix volumes. Accordingly, we refer to the Joint Appendix for Case Nos. 05-4178 and 06-3100 as "J.A.2d" throughout this opinion.

(J.A.2d at 85) In addition to these formal agreements, Plaintiff avers that Defendant Company orally agreed to allow him one week of paid vacation following the completion of one year of work.

During his tenure as foreman, Plaintiff took notice of several issues at the CSU site and reported them to Defendant Company. According to Plaintiff's account, when Plaintiff reported these issues to Defendant Company, the Company's Vice President simply responded: "If you don't like the way the job's being run, your job can end now." (J.A. at 91, 602)

Subsequently, in August 2002, Plaintiff reported several of these concerns to Walter Lipinski (hereinafter "Lipinski"), one of Defendant Union's representatives. Among these concerns, Plaintiff stated that Defendant Company had apprentices working at the CSU site when no journeymen were present, allowed employees to "bank" hours,[2] gave apprentices overtime work when journeymen received none, permitted employees to submit hours not actually worked in lieu of reimbursing them for use of personal cell phones for business-related calls, and allowed millrights to improperly perform union work. As a result, Defendant Union investigated Plaintiff's complaints. Lipinski began by contacting Defendant Company, which denied Plaintiff's claims. Defendant Union then prepared grievances on Plaintiff's behalf. Additionally, it reviewed the wage reports for the CSU site, as well as the Union's hiring hall records. Following this review, Defendant Union determined that some of Plaintiff's allegations did not violate the CBA, and that others could not be corroborated.

---

[2]"Banking" hours refers to the practice of working overtime without pay in exchange for time off at a later date with pay. (Def. Union's Br. at 2)

Plaintiff asserts that on or about August 29, 2002, Defendant Company "attempted to terminate" him. (J.A. at 119, 446) The record reflects, however, that Defendant Company did not discharge him at that time. Ultimately, Defendant Company terminated Plaintiff's employment on September 13, 2002, citing insufficient work at the CSU site and its other active projects. Although Defendant Company substantially completed work at the CSU site on September 15, 2002, Plaintiff avers Defendant Company discharged him for reporting violations at the site to the Company itself and to the Union. Following his termination, Plaintiff initiated four grievances against Defendant Company based on Defendant Company's failure to allow Plaintiff one week of paid vacation following a year on the site, alleged retaliatory discharge, failure to offer Plaintiff overtime opportunities, and improper charging of hours to payroll in lieu of reimbursement for cell phone use.[3]

In October 2002, Defendant Company answered Plaintiff's grievances in a letter to Defendant Union and, at the same time, filed its own grievances against Plaintiff. Defendant Company's grievances alleged that Plaintiff, instead of working on September 13, 2002, had spent the day "at a local restaurant voicing complaints against Donnell, Inc. to the local police," assuming the role of a union steward on the CSU site, and allegedly damaging Defendant Company's vehicle by putting sugar in the gas tank. (J.A. at 240, 243, 246) Defendant Union objected to Defendant Company's grievances on the grounds that it is improper to file grievances against a union member.

---

[3]Also subsequent to his discharge, Plaintiff filed an unfair labor practices charge with the National Labor Relations Board (NLRB) on January 10, 2003, alleging that Defendant Company engaged in unfair labor practices in filing a grievance against him, and allegedly terminating Plaintiff for his union activity, among other things. The NLRB dismissed Plaintiff's charges following an investigation.

Nevertheless, the grievance committee referred Defendant Company's listed grievances to arbitration.

Plaintiff's grievances were reviewed pursuant to the grievance and arbitration procedures enumerated in the CBA. Prior to arbitration, Plaintiff agreed that the CBA did not cover his claim of one week paid vacation, which represented an oral agreement between Plaintiff and Defendant Company. Also prior to arbitration, Plaintiff withdrew his grievance over improper reimbursement for cell phone use.

Arbitration hearings occurred on October 1, 2003 and February 11, 2004. During the arbitration process, Defendant Company withdrew its grievances against Plaintiff. The arbitrator's written decision, issued May 19, 2004, denied Plaintiff's unresolved grievances, finding Defendant Company did not violate the CBA and, in fact, that Defendant Company laid Plaintiff off for lack of work.

**B.      Procedural Facts**

Plaintiff filed suit in Ohio state court against Defendants on March 6, 2003, raising claims of breach of contract and intentional infliction of emotional distress against all Defendants; breach of fiduciary duty against Defendant Union; and, against Defendant Company, claims of promissory estoppel, public policy tort, and retaliatory discharge in violation of the Ohio Whistleblowers' Protection Act. On April 4, 2003, Defendants removed the case to federal district court on the basis that Plaintiff alleged breach of contract and that § 301 of the Labor Management Relations Act[4] "has

---

[4]§ 301(a) of the Labor Management Relations Act provides:

Suits for violation of contracts between an employer and a labor organization

7

been held to preempt State Law claims that are dependent upon an analysis of a collective bargaining agreement." (J.A. at 28) Ultimately, the federal district court exercised supplemental jurisdiction over Plaintiff's remaining claims.

On December 10, 2003, Defendant Company counterclaimed, alleging eight claims for breach of fiduciary duty and miscellaneous torts. Subsequently, Defendant Company and Defendant Union separately filed motions for summary judgment on September 10, 2004 and September 29, 2004, respectively. Plaintiff responded on October 4, 2004 and October 22, 2004, respectively. Additionally, Plaintiff filed a motion for summary judgment as to Defendant Company's counterclaims on September 29, 2004.

On March 18, 2005 and August 10, 2005, respectively, the magistrate judge issued his recommendations on the parties' summary judgment motions. The magistrate judge recommended granting Defendant Union's and Defendant Company's motions for summary judgment, and granting Plaintiff's summary judgment motion as to all but two of Defendant Company's counterclaims.[5] The trial judge adopted the magistrate's recommendations on August 11, 2005 and, subsequently, on August 19, 2005, filed an order terminating the case. Plaintiff then filed this timely appeal.

---

representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (2000).

[5]The remaining two counterclaims were dismissed pursuant to Agreed Order on August 19, 2005.

While Plaintiff's suit remained pending, on August 13, 2004, Plaintiff further filed a Petition to Vacate the Arbitrator's Award. In response, Defendant Company and Defendant Union each filed Motions to Dismiss and Motions for Sanctions. Subsequently, Plaintiff filed a Motion to Amend his Petition to Vacate. The motion was denied as Plaintiff failed to attach the proposed amended motion for the court's consideration. The magistrate judge issued Recommendations, which the district judge adopted in an Order dated March 7, 2005. Therein, the district court granted Defendants' Motions to Dismiss and Motions for Sanctions. Plaintiff timely appealed the Order, and this Court held the appeal in abeyance pending the trial court's decision on the amount of sanctions.

Following briefing on the amount of sanctions, the magistrate judge issued his Recommendation. The trial judge adopted the Recommendation in an Order dated December 9, 2005, awarding sanctions of $12,656.50 in Defendant Company's favor, and $7,387.80 in Defendant Union's favor. Plaintiff then timely appealed, challenging the amount of sanctions ordered. This Court consolidated Plaintiff's three appeals.

## DISCUSSION

I. THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT TO DEFENDANTS ON PLAINTIFF'S CLAIMS OF BREACH OF CONTRACT, PROMISSORY ESTOPPEL, BREACH OF FIDUCIARY DUTY, VIOLATIONS OF THE OHIO WHISTLEBLOWERS' PROTECTION ACT, PUBLIC POLICY TORT, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### A. Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *Cotter v. Ajilon Services, Inc.*, 287 F.3d 593, 597 (6th Cir. 2002). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When presented with a motion for summary judgment, the court views the evidence and draws all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In effect, "any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (internal citation omitted). The district court errs by granting summary judgment for the defendant where issues of credibility are determinative of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994).

To support a grant of summary judgment, the moving party "may . . . discharge[] [its initial burden] by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has done this, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby, Inc.*, 477 U.S. at 252.

**B.      § 301 of the Labor Management Relations Act**

As a threshold matter, this Court must determine whether Plaintiff's claims were preempted under § 301 of the Labor Management Relations Act (LMRA), and whether Plaintiff proffered evidence sufficient to withstand summary judgment on a § 301 claim.[6] Pursuant to § 301 of the

_____

[6]Although Plaintiff's complaint did not invoke § 301 of the LMRA, under the "complete preemption" doctrine, the "preemptive force" of § 301 is so strong that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint

LMRA, a claimant can bring "[s]uit[] for violation of contracts between an employer and a labor organization representing employees" or "between . . . labor organizations" in federal district court. 29 U.S.C. § 185(a) (2000). "Hybrid" suits arise when a plaintiff jointly sues his employer and his union under § 301. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562 (1976); *Winston v. Gen. Drivers, Warehousemen & Helpers, Local Union No. 89*, 93 F.3d 251, 254 (6th Cir. 1996). To succeed in a hybrid § 301 suit, the plaintiff must prove both that his union breached its duty of fair representation and that his employer breached the collective bargaining agreement. *Hines*, 424 U.S. at 570-71; *Winston*, 93 F.3d at 254; *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 542 (6th Cir. 2003). Otherwise, that plaintiff's hybrid § 301 claim must fail.

### 1. *Breach of Duty of Fair Representation (Defendant Union)*

The district court correctly concluded Defendant Union did not breach its duty of fair representation towards Plaintiff. A union breaches its duty "only when [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir. 1983) (citing *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)) (internal quotations omitted). This Court has found conduct arbitrary where a union "handles a grievance in a 'perfunctory' manner, with caprice or without rational explanation." *Id*. "[M]ere negligence or mistaken judgment" will not render a union liable for breach of the duty of fair representation. *Id.*

---

rule." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (internal citations and quotations omitted); *see also Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 24 (1983) ("[I]f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."); *Tisdale v. United Ass'n of Journeymen & Apprentices of Plumbing*, 25 F.3d 1308, 1311-12 (6th Cir. 1994). Thus, this Court properly considers whether § 301 preempts Plaintiff's claims, even though Plaintiff did not classify his case as a "hybrid § 301" claim from the start.

Where a union declines to grieve a member's complaint following due investigation and evaluation of its merits, it does not breach its duty. *Id.* at 184 (collecting cases). Once the plaintiff establishes breach, he must additionally show the union's breach substantially impacted the grievance process. *Dushaw v. Roadway Express, Inc.*, 66 F.3d 129, 132 (6th Cir. 1995).

Defendant Union did not breach its duty of fair representation to Plaintiff. Defendant Union, through its representative Lipinski, spoke with Plaintiff extensively about his concerns. Defendant Union then investigated Plaintiff's several complaints by contacting Defendant Company. Additionally, it reviewed wage reports from the CSU site, and – as Plaintiff himself testified – a representative of Defendant Union visited the CSU site on at least one occasion. Defendant Union ultimately determined that some of Plaintiff's allegations were not violations of the CBA, and that insufficient evidence supported his other claims. Nevertheless, Defendant Union did file grievances on Plaintiff's behalf with respect to four of his complaints. Such conduct can hardly be described as "perfunctory" treatment of Plaintiff's concerns. *See Poole*, 706 F.2d at 183. Nor can Defendant Union's decision not to pursue baseless claims be classed "mistaken judgment." *See id.* Consequently, the district court correctly found Defendant Union did not breach its duty.

2. *Breach of Contract (Defendant Company and Defendant Union)*

Additionally, the district court properly granted summary judgment to Defendant Company on Plaintiff's breach of contract claim. The district court reasoned that because Plaintiff failed to establish breach of Defendant Union's duty of fair representation, his breach of contract claim against Defendant Company must also fail. Additionally, the district court examined the breach of contract claim separately, concluding Plaintiff could not prevail.

Where plaintiff's claims of breach were submitted to and resolved by an arbitrator, that plaintiff will generally be unable to succeed on a hybrid § 301 claim. This Court affords great deference to the arbitrator's determination, and that decision will be upheld so long as it "draws its essence from the bargaining agreement." *Wood v. Int'l Bhd. of Teamsters*, 807 F.2d 493, 500 (6th Cir.1986) ("A court may not review the merits of an arbitration decision, even when the basis for the decision is ambiguous, as long as the award draws its essence from the bargaining agreement."). In fact, this Court has delineated only four circumstances in which the arbitrator's determination will not withstand review: (1) a decision expressly contradicting the terms of the collective bargaining agreement; (2) a decision reading additional terms and requirements into the agreement; (3) a determination unsupported by the agreement or irrationally flowing from it; and (4) a result founded in generalized notions of "fairness and equity," and not specifically in the agreement's terms. *Dobbs, Inc. v. Local No. 614, Int'l Bhd. of Teamsters*, 813 F.2d 85, 86 (6th Cir. 1987). Absent error in the arbitrator's decision, when the arbitrator concludes the employer did not breach the collective bargaining agreement, the plaintiff cannot succeed in asserting a hybrid § 301 claim.

Plaintiff based his breach of contract claim on Defendant Company's failure to give him a week of paid vacation; Defendant Union's failure to appoint a union steward for the CSU site and alleged failure to object to Defendant Company's grievances against Plaintiff; Defendant Company's allowing employees to "bank" hours, denying Plaintiff overtime work, permitting apprentices to work absent a journeyman, and paying employees overtime in lieu of reimbursing them for personal cell phone use; and Defendant Union's alleged failure to act in response to Defendant Company's conduct.

At the outset, it should be noted that Plaintiff's claim for one week of paid vacation is based on an oral agreement allegedly made between Plaintiff and Defendant Company prior to the start of his employment. As the arbitrator observed, Plaintiff's claim of paid vacation "worded as a breach of verbal contract in the grievances, and which is not the subject of any provision of the Labor Agreement, is a matter for the court system, not arbitration." (J.A.2d at 365) Because the CBA makes no provision for a week of paid vacation, the district court correctly found this claim for paid vacation does not support Plaintiff's hybrid § 301 action, which requires a plaintiff to demonstrate breach of the *collective bargaining agreement*. *See Hines*, 424 U.S. at 570-71; *Winston*, 93 F.3d at 254; *Garrison*, 334 F.3d at 542.

Additionally, before the arbitrator issued a decision, Plaintiff's paid vacation grievance was dismissed as not arbitrable, his grievance over improper reimbursement for cell phone use was withdrawn in its entirety, and part of Plaintiff's third grievance – that Defendant Company impermissibly allowed "banking" of hours – was also withdrawn. As a result, only two grievances remained for purposes of arbitration: first, that Plaintiff was not offered overtime opportunities while others were, and second, that Defendant Company did not lay Plaintiff off, but discharged him in retaliation for his self-described "whistleblower" activity. The arbitrator determined that Defendant Company had not breached its obligations under the CBA with respect to Plaintiff's two remaining grievances. As noted above, this Court affords great deference to the arbitrator's determination and "may not review the merits of an arbitration decision, even when the basis for the decision is ambiguous, as long as the award draws its essence from the bargaining agreement." *Wood*, 807 F.2d at 500. First, the arbitrator determined Plaintiff had no claim to overtime hours. The arbitrator's

decision followed logically from the terms of the CBA, which expressly makes "[t]he amount of overtime and the personnel who work overtime . . . the prerogatives of the Employer." (Article VII(E) of the CBA (J.A.2d at 84)) Moreover, the record evidence does not support a finding that Defendant Company impermissibly allowed apprentices to work absent the appropriate number of journeymen. As the arbitrator observed, "if the apprentices were in their fifth year, pursuant to the Apprenticeship Standards it was permissible for them to perform certain tasks without the supervision of a journeyman." (J.A.2d at 88)

Second, the arbitrator denied Plaintiff's grievance alleging retaliatory discharge. Relevant to his decision, the arbitrator found Defendant Company met its completion date of September 15, 2002 on the CSU project and, following that date, Defendant Company had only "clean up and punch list items" remaining. (J.A.2d at 89) Additionally, the arbitrator found that Defendant Company had no new projects starting until December 2002, and that it laid off fourteen other employees for lack of work at that time. The arbitrator examined these facts with reference to Article VI(A) and (D) of the CBA, which expressly provides that "the Employer shall be the sole judge of the number of journeymen Employees required to perform his work," and "retain[s] the right to reject any applicant referred by the Union . . . ." (J.A.2d at 84) Further, the arbitrator properly declined to apply Article IX(I) and (N) – the purported bases for Plaintiff's retaliatory discharge grievance – since those provisions do not deal with separation of employees from work, but rather wages, other terms of employment, and the employer's obligations to comply with labor law generally.

15

Because it "draws its essence" directly from the terms of the CBA governing Plaintiff's employment, this Court upholds the arbitrator's decision that Defendant Company did not breach its contractual obligations. *See Dobbs, Inc.*, 813 F.2d at 86. Consequently, this Court affirms the district court's grant of summary judgment to Defendants on Plaintiff's breach of contract claim and his hybrid § 301 claim more generally.

**C.      Plaintiff's Additional Claims and § 301 Preemption**

Plaintiff additionally asserted claims of intentional infliction of emotional distress, promissory estoppel, public policy tort, and retaliatory discharge in violation of the Ohio Whisteblowers' Protection Act against Defendants. The district court granted summary judgment to Defendants on all claims. In reviewing the district court determination, this Court must consider whether § 301 preempts these state law claims and, if they are not preempted, must apply the substantive law of Ohio. We find that the district court properly granted summary judgment to Defendants on all of Plaintiff's claims.

1.      *§ 301 Preemption Generally*

"[A]n application of state law is preempted by § 301 of the Labor Management Relations Act . . . only if such application requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988); *see also Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc) (noting that "§ 301 of the LMRA preempts any state-law claim arising from a breach of a collective bargaining agreement"). Accordingly, a § 301 suit preempts state law claims inextricably bound up in an interpretation of a collective bargaining agreement, as well as state law claims brought to vindicate an employee's rights under such an

agreement. Section 301 does not unequivocally preempt state tort claims, however, and state tort claims can be maintained so long as they arise independently of the collective bargaining agreement. Nor does § 301 always preempt state law claims for retaliatory discharge. To determine whether § 301 preemption applies to a particular claim, this Court follows a two pronged inquiry:

> First, the district court must examine whether proof of the state law claim requires the interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both is borne [sic] of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted.

*DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (internal citations omitted). Thus, with respect to each of Plaintiff's asserted claims, § 301 may preempt application of Ohio substantive law.

> 2. *Intentional Infliction of Emotional Distress (Defendant Company and Defendant Union)*

The district court properly granted summary judgment to Defendant on Plaintiff's intentional infliction of emotional distress claim. The district court first found Plaintiff's emotional distress claim preempted by § 301, and then went on to state that, even were it not, Plaintiff had failed to produce sufficient evidence to support this claim.

This Court has not held that § 301 unequivocally preempts claims of intentional infliction of emotional distress. *Mattis v. Massman*, 355 F.3d 902, 908 (6th Cir. 2004) (citing *O'Shea v. Detroit News*, 887 F.2d 683, 687 (6th Cir. 1989) (en banc)). Rather, this Court follows the analysis set forth above, and begins by considering whether Plaintiff's intentional infliction of emotional distress claim is independent of the CBA governing his employment. Here, Plaintiff fails to allege

any conduct on Defendant Company's or Defendant Union's behalf taken independent of their relationships as employee-employer and member-union, respectively. In fact, much of the conduct Plaintiff relies upon to form his emotional distress claim falls under the authority of the CBA and, therefore, Plaintiff's emotional distress claim is preempted under § 301. *See Mattis*, 355 F.3d at 908 (finding preemption where allegations underlying plaintiff's intentional infliction claim "all involve workplace actions taken under the ostensible authority of the CBA, and seem to be a subtle attempt to present contract claims in tort clothing"); *Pearson v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 99 Fed. Appx. 46, 53 (2004). Accordingly, the district court properly granted summary judgment on this claim.

### 3. *Promissory Estoppel (Defendant Company)*

The district court granted summary judgment to Defendant Company on Plaintiff's promissory estoppel claim, finding it preempted by § 301 and, additionally, stating that Plaintiff could not rely on promissory estoppel since Defendant Company employed him pursuant to contract. Plaintiff's brief on appeal fails to challenge this finding, nor does it cite case law to the effect that the district court erred in granting summary judgment on his promissory estoppel claim. Accordingly, Plaintiff waives this argument and this Court need not address Plaintiff's promissory estoppel claim. *See Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006) ("Issues not argued on appeal are deemed waived for appellate review.").

### 4. *Public Policy Tort (Defendant Company)*

The district court granted summary judgment on Plaintiff's public policy tort claim, reasoning that only employees at will can invoke this cause of action. Plaintiff's brief on appeal also fails to

argue this point or to cite case law to the effect that the district court erred in this regard.

Consequently, Plaintiff also waives this argument. *See Gregory*, 444 F.3d at 737.

>    5.    *Retaliatory Discharge in Violation of Ohio Whistleblowers' Protection Act (Defendant Company)*

The district court correctly granted summary judgment to Defendant Company on Plaintiff's

whistleblower claim. In doing so, the district court reasoned that Plaintiff failed to establish a claim

under the statute and, additionally, that the arbitrator's decision on the matter should stand.

The Ohio Whistleblowers' Protection Act prohibits an employer from terminating an

employee in retaliation for reporting violations of law first to the employer itself, and then to outside

entities with some relevant prosecutorial authority. The Act reads:

> If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, . . . the employee may file a written report that provides sufficient detail to identify and describe the violation with . . . any . . . appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged.

Ohio Rev. Code Ann. § 4113.52(A)(1)(a) (2006). The Ohio Supreme Court requires claimants

invoking the protections of this Act to strictly comply with its dictates. *Contreras v. Ferro Corp.*,

652 N.E.2d 940, 943-44 (Ohio 1995).

In this case, Plaintiff did not establish that Defendant Company "violat[ed] . . . any state or federal statute or any ordinance or regulation of a political subdivision" at all, *see* Ohio Rev. Code Ann. § 4113.52, but rather relied on allegations that Defendant Company had "banked" hours and permitted apprentices to work when journeymen were not present on the site. As the magistrate judge observed, "Plaintiff claims he believes that these are felonies, but offers no suggestion as to why that belief is reasonable." (J.A. at 62) Even viewing the evidence in the light most favorable to him, Plaintiff cannot establish a violation of the Ohio Whistleblowers' Protection Act. Therefore, this Court affirms the district court's grant of summary judgment on all of Plaintiff's claims against Defendant Company and Defendant Union.

II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN (1) AWARDING SANCTIONS AGAINST PLAINTIFF, AND IN (2) SETTING THE AMOUNT OF THOSE SANCTIONS

A.    **Standard of Review**

This Court reviews district court orders imposing Rule 11 sanctions, as well as the reasonableness of those sanctions, under an abuse of discretion standard. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401, 405 (1990). The district court abuses its discretion when "it base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id*.

B.    **Award of Rule 11 Sanctions**

The district court did not abuse its discretion in granting Defendants' motions for sanctions. In granting the motion, the district court reasoned that Plaintiff clearly lacked standing to petition to vacate the award and, additionally, had cited no legal authority in support of his position.

20

Pursuant to Federal Rule of Civil Procedure 11(c), a district court may impose sanctions upon litigants or their attorneys for making improper motions or representations to the court. Specifically, under Rule 11(b), motions and pleadings must

> (1) . . . not be[] presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) [assert only] . . . claims, defenses, and other legal contentions . . . warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal or existing law or the establishment of new law;
> (3) [contain only] . . . allegations and other factual contentions hav[ing] evidentiary support . . . ; and
> (4) . . . den[y] . . . factual contentions . . . [only as] warranted on the evidence . . . .

Fed. R. Civ. P. 11(b). The district court can impose both monetary and non-monetary sanctions as necessary to deter future violative conduct; however, under Rule 11(c)(2)(A), "[m]onetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2)."

The district court did not abuse its discretion in awarding monetary sanctions against Plaintiff inasmuch as its ruling does not depend on an "erroneous view of the law or on a clearly erroneous assessment of the evidence." *See Cooter & Gell*, 496 U.S. at 405. Rule 11(b) imposes a duty on Plaintiff and Plaintiff's counsel alike to undertake a "reasonable inquiry" into the law and facts before filing a motion with the court. Fed. R. Civ. P. 11(b); *Albright v. Upjohn*, 788 F.2d 84, 88 (6th Cir. 1988); *INVST Fin. Group v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391, 401 (6th Cir. 1987). In reviewing counsel's conduct, this Court employs "an objective standard of reasonableness under the circumstances." *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989). Plaintiff argues on appeal that its Petition "was not filed for an improper purpose" and made "nonfrivolous arguments for an extension and/or modification of the law." (Pl.'s

Sanctions Br. at 8) In fact, Plaintiff wholly failed to address his lack of standing to bring a Petition to Vacate the arbitrator's award, much less to argue for extension of the law.

A "reasonable inquiry" into the law would undoubtedly have revealed that Plaintiff had no standing because he was not considered a "party to the arbitration" – rather Defendant Company and Defendant Union, as signatories to the CBA, were "parties," and only they had standing to petition to vacate the arbitration award. *See Bacashihua v. USPS*, 859 F.2d 402, 405 (6th Cir. 1988). Additionally, "reasonable inquiry" would have revealed that Plaintiff, by simply alleging in its Petition to Vacate that Defendant Union violated its duty of fair representation, could have laid the groundwork for standing to challenge the arbitrator's award.[7] *See Aloisi v. Lockheed Martin Energy Sys.*, 321 F.3d 551, 558 (6th Cir. 2003) ("The general rule in LMRA actions is that an individual employee has no standing to file an action against her employer without also filing suit against her union for breach of the CBA."). Moreover, Plaintiff could have advanced a good faith argument for extending existing law to give employees standing to challenge an arbitration award where, as here, they arguably become parties to the proceeding notwithstanding that they are not parties to the CBA. Indeed, Plaintiff could have argued that where employers file grievances against employees in an attempt to force them to incur personal liability, the union submits those grievances for arbitration, and if they are subsequently found arbitrable, the employee effectively becomes a party to the arbitration. The fact remains that Plaintiff failed to advance that argument in his Petition to Vacate.

---

[7]Although Plaintiff's Brief on Appeal finally advances this argument, Pl.'s Sanctions Br. at 9, his failure to raise the argument below results in waiver.

Perhaps most egregiously, Plaintiff's Response to Defendants' Motions to Dismiss persists in failing to cite relevant portions of the record, and in failing to cite case law. Further, consistent with Rule 11(c)'s safe harbor provision, Defendant Company's counsel notified Plaintiff of its intent to seek Rule 11 sanctions and provided Plaintiff with adequate opportunity to withdraw its Petition to Vacate. Thus, the district court did not abuse its discretion in ordering sanctions against Plaintiff.

## C.    Amount of Sanctions

Further, the district court did not abuse its discretion in determining the amount of sanctions appropriate against Plaintiff. The court awarded sanctions in the amount of $12,656.50 to Defendant Company, and $7,387.80 to Defendant Union. (J.A. at 68, 70) In support of his order, the magistrate judge stated

> [A] "make whole" remedy is necessary in this case. The frivolous conduct asserted by Defendants is the filing of this action in the first instance because Plaintiff had no standing to file it. All of Defendants' expense has been directly related to having this Court dismiss the initial filing. Defendants both gave Plaintiff proper notice under Fed. R. Civ. P. 11 of the frivolous character of the filing and of the legal grounds for dismissal, which Plaintiff and his counsel ignored. Nor can the Court ignore the fact that this action was filed during the pendency of much more extended litigation between these same parties . . . which was so acrimonious that the Magistrate Judge had to intervene in person in depositions to prevent further escalation of hostility.

(J.A.2d at 66)

Rule 11(c)(2) limits sanctions "to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c). As this Court has stated, "[t]he sanctions that may be imposed include 'a reasonable attorney's fee'" which "does not necessarily mean actual legal expenses incurred." *Jackson*, 875 F.2d at 1229. Rather, it can include

23

amounts necessary to deter as well as compensate. *Id.* Reasonableness of fees will depend, in part, on whether the party seeking sanctions acted promptly to mitigate damages. *Id.* at 1230.

The record does not reflect that Defendants unnecessarily prolonged this matter and, in fact, Defendant Company promptly contacted Plaintiff's counsel on September 21, 2004, raising the point that Plaintiff lacked standing to bring its Petition for Vacation of the arbitrator's award (which it filed August 13, 2004) and demanding that Plaintiff voluntarily dismiss the motion. Defendant Company persisted, contacting Plaintiff again on October 20, 2004. Similarly, Defendant Union contacted Plaintiff on September 24, 2004, informing him of his lack of standing. Thus, Defendants each separately attempted to mitigate Plaintiff's damages.

The amount of sanctions awarded reflects the time and expense Defendants incurred in defending against Plaintiff's Petition to Vacate – a claim which, as discussed above, Plaintiff had no standing to bring in the first place. The magistrate judge carefully reviewed the time and expenses claimed and, in fact, reduced Defendant Company's claimed time and expenses by $419.63 (2.2 hours) when it found that time was spent on defending against Plaintiff's initial cause of action. Additionally, Defendants proffered affidavits from local counsel of similar experience in support of the reasonableness of counsel's rates. The award of sanctions in this case is reasonable, serves the twin aims of Rule 11 – deterrence and compensation – and, consequently, this Court finds the district court did not abuse its discretion in setting the amount of sanctions.

**CONCLUSION**

24

For the foregoing reasons, we **AFFIRM** the district court's order granting summary judgment to Defendants on all claims, as well as the district court's orders awarding sanctions to Defendants and setting the amounts of those sanctions.